**Gary Duane GALE, Appellant,**

v.

**The STATE of Texas.**

No. 0688–98.

Court of Criminal Appeals of Texas.

May 19, 1999.

**222**

Carl E. Mallory, Arlington, for appellant.

Sylvia Mandel, Assist. DA, Fort Worth, Matthew Paul, State's Atty., Austin, for the State.

## OPINION

PRICE, J., delivered the unanimous opinion of the Court.

Appellant was charged with the offense of possession of marijuana. He pled guilty to the charge and elected to have the jury assess punishment, pleading "not true" to the special issue involving a deadly weapon finding. The jury sentenced appellant to two years confinement and returned an affirmative finding on the deadly weapon special issue. Appellant appeals this finding, averring that the evidence is legally insufficient to find a deadly weapon was "used" in the commission of his criminal possession offense.[1] We will affirm.

### Facts

In February of 1995, undercover narcotics officers arrived at appellant's residence

---

1. This is the identical issue appellant presented to the Court of Appeals. Appellant did not challenge the factual sufficiency of the evidence in the Court of Appeals. *See Clewis v. State*, 922 S.W.2d 126, 129–30 (Tex.Crim.App. 1996). Rather, appellant contends that the Court of Appeals decision conflicts with relevant United States Supreme Court precedent, *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).

and conducted a "knock-and-talk."[2] Officer Rex Phelps spoke with appellant and his wife, explaining both his purpose and their rights. Officer Phelps testified that both persons were cooperative and led him directly to their bedroom closet. Therein, Officer Phelps discovered, *inter alia*, a trash bag containing over 20 lbs. of marijuana divided up into smaller, transparent bags and one Ruger Mini–14 rifle; also found in the closet were an Uzi semi-automatic assault-type rifle, one nine-millimeter rifle, one nine-millimeter handgun, ammunition for the firearms, including a loaded clip for the Mini–14, and a cardboard box containing approximately $4500 in cash.[3] Based upon these discoveries, Officer Phelps arrested appellant and charged him with possession of marijuana.

At trial, appellant pled guilty to the charge of possession. Appellant elected to have the jury assess punishment and pled "not true" to the special issue concerning the use or exhibition of a deadly weapon.[4] The State offered evidence in the form of testimony from Officer Phelps and Officer James Bowie that any of these weapons could have been fully loaded and ready to fire within "seconds." The officers further testified that in their opinion, based on their numerous experiences with drug trafficking, weapons such as those confiscated from appellant are used by drug traffickers to protect their contraband merchandise and the cash from its sale. Subsequently, the jury sentenced appellant to two years confinement and affirmatively answered the deadly weapon special issue.

This affirmative finding is the basis of appellant's subsequent appeals.

### Court of Appeals

The Court of Appeals determined that appellant's case was indistinguishable from Texas precedent, *Sanchez v. State*, 906 S.W.2d 176, 180 (Tex.App.—Fort Worth 1995, pets. dism'd & ref'd); *Reyes v. State*, 906 S.W.2d 256, 257 (Tex.App.—Fort Worth 1995), *rev'd on other grounds*, 938 S.W.2d 718 (Tex.Crim.App.1996). *See Gale v. State*, No. 2–97–114–CR (Tex. App.—Fort Worth February 12, 1998) (not designated for publication). The Court of Appeals stated that the jury could have rationally concluded that appellant "used" the guns to facilitate his care, custody and management of the contraband, based on the officers' testimony. *See id.*, citing *Patterson v. State*, 769 S.W.2d 938, 942 (Tex. Crim.App., 1989). Thus, the Court of Appeals overruled appellant's sole point of error and affirmed his conviction. *See id.*

### Standard of Review

To review evidence for legal sufficiency, this Court must view the evidence in the light most favorable to the verdict and determine if a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154, 157

2. A "knock-and-talk" involves police knocking at a suspect's door, identifying themselves as police officers and explaining to the person that they are a suspect in a narcotics investigation. The officers then advise the suspect of his rights and ask the suspect for consent to search his residence or to further discuss the allegations against them.

3. Appellant admitted ownership of all the weapons at trial. Moreover, appellant testified to ownership of two other rifles and a shotgun. Those items were not presented as evidence.

4. The Texas Code of Criminal Procedure, Art. 42.12 § 3g(a) provides in pertinent part:

The provisions of Section 3 [Judge Ordered Community Supervision] of this article do not apply:
(2) to a defendant when it is shown that a deadly weapon as defined in Section 1.07, Penal Code, was used or exhibited during the commission of a felony offense.

Tex Code Crim. P. Ann. art. 42.12 § 3g(a) (West 1998).

(Tex.Crim.App.1991)). When applied to the special issue regarding the use or exhibition of a deadly weapon during the commission of a felony offense, the question facing this Court is whether a rational trier of fact could find beyond a reasonable doubt that the mere possession of firearms *facilitated* the associated felony. *See Patterson*, 769 S.W.2d at 941.

### Analysis

■ Appellant's sole ground for review is: the evidence is insufficient as a matter of law to show that the weapons stored in the common closet of the house owned by appellant were "used" in connection with the offense of possession of marijuana of more than 5 lbs. but less than 50 lbs.[5] To support this argument, appellant avers that the United States Supreme Court decision in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) undercuts the broad definition of "use" this Court handed down in *Patterson*.

In *Patterson*, police obtained a warrant to search Patterson's home. *Patterson*, 769 S.W.2d at 939. They knocked on his door, announced they were officers, and approximately ten seconds later kicked in the door. *Id.* Patterson was sitting on a couch; as an officer approached him Patterson stated "I have a gun right here, but I'm not going to touch it." *Id.* The gun lay between Patterson's left leg and the end of the sofa. *Id.* The officer retrieved the weapon. *Id.* The subsequent search of the residence revealed methamphetamine, drug paraphernalia and almost $1000 in cash. *Id.* At trial, Patterson was found guilty of possessing methamphetamine and an affirmative finding of use of a deadly weapon was entered in the judgment. *See id.*, citing TEX.CODE CRIM. P. ANN. art. 42.12 § 3g(a) (West 1998). We were called upon to define and differentiate the terms "use" and "exhibit" in article 42.12 § 3g(a) of the Texas Code of Criminal Procedure. *Patterson*, 769 S.W.2d at 940. After a detailed analysis of both words, this Court determined that "use" as intended in the statute extended to "*any* employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony." *Id.* at 940–41 (emphasis in original). It then compared the facts before it to those of a similar federal case, *United States v. La Guardia*, 774 F.2d 317 (8th Cir.1985), in which the Eighth Circuit Court of Appeals found "use" of a firearm where the "weapons had undoubted utility in the protection of the valuable supply and cash on hand." *Id.* at 941. Finally, in summarizing its decision, the *Patterson* Court deferred to the Court of Appeals' holding that "a rational trier of fact could find that appellant 'used' the firearm during the commission of the felony offense of possessing the contraband, in a sense that the firearm protected and facilitated appellant's care, custody and management of the contraband," and consequently affirmed the special issue finding. *Id.* at 942.

*Patterson* has continued to be cited as valid controlling precedent in Texas.[6]

---

5. Appellant repeatedly stresses that he and his wife were very cooperative with the officers during the entire "knock-and-talk" and that this was clearly a consensual search. This argument apparently assumes that this cooperative setting negates the possibility that the guns were "used" during the offense for which he was arrested. We are not persuaded by this argument. The cooperativeness of the suspect may play a limited role in how a fact-finder weighs certain evidence, but it does not by itself negate the possibility that these guns facilitated appellant's illegal possession of the marijuana.

6. *See Whatley v. State*, 946 S.W.2d 73, 76 (Tex.Crim.App.1997) (all felonies, including solicitation, are theoretically susceptible to an affirmative finding on the use or exhibition of a deadly weapon); *Hill v. State*, 913 S.W.2d 581, 583–84 (Tex.Crim.App.1996) (defendants charged with injury to child by omission, in failing to feed child to point of starvation, were properly found to use a deadly weapon; to wit, the chains, belts and locks used to restrain child from proper nutrition); *Tyra v. State*, 897 S.W.2d 796, 799 (Tex.Crim.App. 1995) (intoxicated defendant who accidentally killed victim while driving pickup truck used deadly weapon during commission of offense

Nevertheless, appellant argues that this Court based its *Patterson* rationale and holding on the Federal jurisprudence in this area, through its citation and explanation of *La Guardia* in its opinion. Thus, appellant avers, when the United States Supreme Court handed down *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) and essentially overruled *La Guardia*, it also overruled our precedent in this area and negated a finding of 'use' in his case. *See Bailey*, 516 U.S. at 148–50, 116 S.Ct. at 508–09 (Government could not show that defendant actively employed a firearm during the commission of cocaine possession when the cocaine was found in the driver's compartment but firearm was found in a bag in the locked trunk of vehicle; thus, insufficient evidence to find "use").

There are many flaws with appellant's argument. First, this Court did not base its decision in *Patterson* on *La Guardia* or federal jurisprudence in this area of the law. Rather, the *Patterson* Court used *La Guardia* as an illustration of what one federal court was doing with a similar, but not identical statute. This leads to the second flaw in appellant's argument: the federal statute and the Texas statute are semantically distinguishable, in that the Texas statute involves "use or exhibit" while the Federal statute encompasses "use or carry". *See* TEX.CODE CRIM. P. ANN. art. 42.12 § 3g(a) (West 1998); *cf* 18 U.S.C.A. § 924(c)(1). Since both statutes contain a different second word, and the second word necessarily influences how the word "use" will be defined—as both Courts assume the legislative body enacting the statutes intended each term to have a particular, nonsuperfluous meaning—it is valid for the definitions of "use" in the two statutes to differ. Finally, as the United States Supreme Court giveth, it also taketh away: in a recent opinion, and on virtually the same facts as *Bailey*, the Supreme Court gave a broad definition to the other prong of the federal statute—"carry". *See Muscarello v. United States*, 524 U.S. 125, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998) ("generally accepted contemporary meaning" of the word "carry" includes the carrying of firearms in a bag in an automobile's locked trunk).[7] This is akin to the determination that "exhibit" has a more circumscribed role in the Texas statute than "use." *See Patterson*, 769 S.W.2d at 941. For these reasons, we hold that the *Bailey* decision does not substantially affect the continued application of *Patterson* as precedent for the definition of "use" in Texas jurisprudence.

■ Applying that definition to the facts of the instant case, in the light most favorable to the verdict, it is clear that a juror could rationally find that these weapons facilitated appellant's criminal offense of possession. There was uncontroverted testimony at trial that drug traffickers use firearms to protect their drugs and drug proceeds. Police discovered appellant's firearms within the same closet that they encountered a substantial amount of drugs and cash. Although the weapons were

---

of involuntary manslaughter). Even a case that reached the opposite result was distinguished on its facts from *Patterson*—it did not question *Patterson*'s validity nor its underpinning rationale. *See Wynn v. State*, 847 S.W.2d 357, 360–61 (Tex.App.—Houston [1 st Dist.] 1993) (where firearms found in common room of residence that defendant shared with two others—not in bedroom associated with defendant—and no fingerprint or registration evidence was presented to prove ownership of the firearms, evidence was legally insufficient to find appellant 'used' a deadly weapon), *aff'd on other grounds*, 864 S.W.2d 539 (Tex.Crim.App.1993).

7. The Supreme Court states "[m]ore importantly, having construed 'use' narrowly in *Bailey*, we cannot also construe 'carry' narrowly without undercutting the statute's basic objective." *Muscarello*, 118 S.Ct. at 1918. This Court agrees. The objective of both statutes is to keep guns and criminals separate. *See Muscarello* 118 S.Ct. at 1916 (provision seeks to "persuade the man who is tempted to commit a Federal felony to leave his gun at home.")

unloaded, the ammunition for the firearms was found in the same closet. There was also uncontroverted testimony that these weapons could be fully loaded and ready to fire within "seconds". This is not a case where a person's weapons are found in a gun cabinet or closet completely separate from the criminal enterprise; here, all of the weapons were virtually inches away from the contraband and its alleged proceeds—one of the weapons was even inside the trash bag containing the marijuana. Nor is this a case where a person possessed a small amount of drugs, more akin to "recreational" drug use. Appellant possessed over 20 pounds of marijuana that had been previously divided into distribution-sized packages. Taking all of these facts into consideration, it would be rational for a fact-finder to determine that appellant 'used' these weapons to facilitate the criminal possession of marijuana.

For the foregoing reasons, we overrule appellant's sole ground for review and affirm the judgment of the Court of Appeals.