TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00663-CR






Ramiro Hinojosa, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT


NO. 01-184-K368, HONORABLE BURT CARNES, JUDGE PRESIDING







Appellant Ramiro Hinojosa pleaded guilty before a jury to a two-count indictment
accusing him of possessing more than four grams of cocaine and more than four grams of
methamphetamine, in both cases with intent to deliver. See Tex. Health & Safety Code Ann.
§ 481.112(a), (d) (West Supp. 2002). Appellant pleaded not true to the allegation that he used or
exhibited a firearm in the commission of the offenses. After hearing evidence, the jury assessed
punishment at imprisonment for forty-five years and affirmatively found that a firearm was used in
the commission of the offenses.

Appellant contends the district court erred by refusing to place the witnesses under
the witness exclusion rule until after opening statements and by refusing to separately try the deadly
weapon and punishment issues. He also contends the evidence is legally insufficient to support the
deadly weapon finding. We will overrule these contentions and affirm the conviction.

Appellant invoked the witness exclusion rule after the jury was selected and sworn,
but the court denied appellant's request that the witnesses be excluded before the parties' opening
statements. Instead, the court placed the rule into effect at the conclusion of the statements,
immediately before testimony began.

Evidence rule 614 provides that at the request of a party, "the court shall order
witnesses excluded so that they cannot hear the testimony of other witnesses." Tex. R. Evid. 614. 
By its terms, the rule applies only to witness testimony. See Creel v. State, 493 S.W.2d 814, 820
(Tex. Crim. App. 1973) (rule does not require exclusion of witnesses during jury voir dire and before
trial testimony begins). No violation of rule 614 is shown. Even if the court erred by permitting the
witnesses to hear the opening statements, appellant's substantial rights were not affected. See Tex.
R. App. P. 44.2(b); see also Moore v. State, 882 S.W.2d 844 (Tex. Crim. App. 1994) (applying
harmless error rule to witness rule violation). During her opening statement, the prosecutor
discussed the facts of the case in very general terms. None of the facts she mentioned were disputed. 
The statement could not have influenced the testimony of any witness in a manner prejudicial to
appellant. Point of error one is overruled.

The court also denied appellant's request that the trial be bifurcated into a "guilt-innocence" phase, at which the deadly weapon issue would be tried, followed by a punishment
phase. Instead, all testimony was heard during a single proceeding, after which the court submitted
the deadly weapon special issue to the jury together with the question of punishment.

The statute providing for bifurcated trials does not apply to pleas of guilty. Basaldua,
481 S.W.2d 851, 853 (Tex. Crim. App. 1972). Thus, the trial before a jury on a defendant's guilty
plea is a unitary trial, not a bifurcated one. Wilkerson v. State, 736 S.W.2d 656, 659 (Tex. Crim.
App. 1987); Basaldua, 481 S.W.2d at 852-53. Appellant relies on a statement by the court of
criminal appeals that it is the "better practice" to submit the deadly weapon issue at the guilt-innocence phase. Hill v. State, 913 S.W.2d 581, 586 (Tex. Crim. App. 1996). Hill, however, was
a trial on a plea of not guilty and has no application here. And see Fann v. State, 702 S.W.2d 602,
604-05 (Tex. Crim. App. 1986) (op. on reh'g) (better practice is to submit deadly weapon issue at
punishment phase). No error is shown and point of error two is overruled.

Finally, appellant contends the evidence does not support the deadly weapon finding. 
See Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (West Supp. 2002). (1) We must determine if,
viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could
have found beyond a reasonable doubt that appellant used or exhibited a firearm during the
commission of these offenses. See Gale v. State, 998 S.W.2d 221, 224 (Tex. Crim. App. 1999).

On the morning of November 2, 2000, several law enforcement officers executed a
warrant to search a house in rural Williamson County. Appellant, the only occupant of the house,
was in the bedroom. In that room, the officers found a small plastic bag containing what proved to
be cocaine and a wallet containing $4900 in cash. Other containers of what proved to be either
cocaine or methamphetamine were found in the hall closet of the house, on a shelf in the detached
garage, under the hood of a car parked by the house, and in a nearby pile of trash. In total, the
officers found 196.32 grams of cocaine and 29.36 grams of methamphetamine, much of it in small
packages as if for sale.

An unloaded .22 rifle and a digital scale were found on a pool table in the living room
house. Two more scales were found in the kitchen. Inside the locked trunk of a second car parked
inside the garage, the officers found a triple-beam scale, an unloaded .30-.30 rifle, an unloaded .45
pistol, and two boxes of .45 bullets. $5000 in cash was found on the floor of the garage. Although
other bullets were found during the search, none fit the two rifles. An experienced narcotics officer
testified that it is common for drug dealers to have a firearm available to protect the drugs and cash
received from sales.

The car in which controlled substances were found was registered to appellant. The
car in the garage was unregistered and appeared to be inoperable. Appellant rented the house and
had occupied it for about six months.

There is no evidence that appellant exhibited a firearm, so the question is whether he
used one or more of the weapons during the commission of the offenses for which he was convicted. 
The purpose of denying probation and delaying parole eligibility for those who use a deadly weapon
is to "diminish the danger to human life that could be expected to arise in the circumstances that
attend a felony offense when its commission is accompanied by a deadly weapon." Patterson v.
State, 723 S.W.2d 308, 315 (Tex. App.--Austin 1987), aff'd, 769 S.W.2d 938, 941 (Tex. Crim. App.
1989). (2) The phrase "used . . . during the commission of a felony offense" must be "sufficiently
flexible to accommodate any felony offense falling within the purpose of the statute." Id. at 314
(italics omitted). This Court concluded in Patterson that "the statutory expression 'used . . . during
the commission of a felony offense' refers certainly to the wielding of a firearm with effect, but it
extends as well to any employment of a deadly weapon, even its simple possession, if such
possession facilitates the associated felony." 723 S.W.2d at 315. In affirming this Court's opinion,
the court of criminal appeals quoted this passage with approval. Patterson, 769 S.W.2d at 941. (3)

In Patterson, the defendant was one of several persons in a room containing drugs
and drug paraphernalia. Id. at 311. He was sitting on a couch with a loaded .45 revolver concealed
beside his leg. Id. Because the defendant had the revolver ready at hand and in close proximity to
the drugs, and because there was no evidence of a lawful purpose behind the drawn revolver, this
Court concluded that a rational trier of fact could find that he used the weapon "in a sense that the
firearm protected and facilitated [his] care, custody, and management of the contraband." Id. at 315.

In Gale, the court of criminal appeals upheld an affirmative finding in the context of
a prosecution for possession of marihuana. In that case, over twenty pounds of marihuana (in small
packages), three unloaded rifles, an unloaded handgun, ammunition for the weapons (including a
loaded clip), and $4500 cash were found in the defendant's closet. 998 S.W.2d 221 at 223. The
court held that a jury could rationally find that the defendant used the weapons in the commission
of the offense citing: the large quantity of marihuana clearly possessed for sale; the presence of the
weapons in the same closet and only inches away from the marihuana; and police testimony that drug
traffickers use firearms to protect their drugs and money and that the weapons in question could be
quickly loaded. Id. at 225-26.

Appellant argues that in order to find that a weapon was used to facilitate the
commission of unlawful drug possession, the weapon must be found either near the defendant (as
in Patterson) or near the controlled substance (as in Gale). He urges that because the firearms in this
cause were neither found with the controlled substances nor found on or near appellant, the evidence
does not support the affirmative finding. See Beal v. State, 35 S.W.3d 677, 686 (Tex.
App.--Houston [1st Dist.] 2000, pet. granted) (handgun in car with defendant and
methamphetamine); Dimas v. State, 987 S.W.2d 152, 154-55 (Tex. App.--Fort Worth 1999, pet.
ref'd) (loaded rifles inches from cocaine); Moreno v. State, 978 S.W.2d 285, 289 (Tex. App.--Fort
Worth 1998, no pet.) (handgun and rifle next to cocaine); Charles v. State, 915 S.W.2d 238, 241
(Tex. App.--Beaumont 1996, pet. ref'd) (loaded pistol in room where drugs found); Sanchez v.
State, 906 S.W.2d 176, 181 (Tex. App.--Fort Worth 1995, pet. ref'd) (rifles in closet with cocaine);
Henton v. State, 893 S.W.2d 165, 167 (Tex. App.--Houston [1st Dist.] 1995, no pet.) (defendant
holding pistol as police entered to execute search); Ramirez v. State, 822 S.W.2d 240, 245 (Tex.
App.--Houston [1st Dist.] 1991, pet. ref'd) (defendant carrying loaded pistol when making delivery).

We agree that the factors cited by appellant support an affirmative finding, but we do
not agree that they are always necessary for such a finding. (4) Ultimately, the sufficiency of the
evidence must be determined on a case-by-case basis. Appellant admitted possessing a large
quantity of cocaine and methamphetamine with the intent to deliver. The evidence shows that
appellant used the entire premises--the house and the surrounding curtilage--in his criminal
enterprise. The rifles, pistol, and ammunition for the pistol were found with scales the jury could
reasonably believe were used by appellant to weigh the controlled substances. While not in the trunk
of the car with the firearms and scales, drugs and cash were found in the garage in which the car was
parked. The main cache of drugs was found in a second car parked outside the garage. In short, the
firearms were not found in a place completely separate from the criminal enterprise. Compare Gale,
998 S.W.2d at 226. Although appellant's ownership of the weapons was not positively shown, the
jury could reasonably conclude from the circumstances that they belonged to him. In light of the
testimony of the narcotics officer, the jury could rationally conclude that the firearms were, like the
scales, a tool of appellant's trade.

Viewing all the evidence in the light most favorable to the jury's finding and taking
all the relevant factors into consideration, we conclude that it would be rational for a fact-finder to
determine that appellant used the weapons, or at least the pistol for which he had ammunition, to
protect his drugs and cash, and hence to facilitate his possession and delivery of the controlled
substances. Point of error three is overruled.

The judgment of conviction is affirmed.



 ___________________________________________

 David Puryear, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed: September 12, 2002

Do Not Publish

1. A defendant is ineligible for judge-ordered community supervision "when it is shown that a
deadly weapon . . . was used or exhibited during the commission of a felony offense." Tex. Code
Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (West Supp. 2002). An affirmative finding that the defendant
used a firearm or other deadly weapon must be "enter[ed] . . . in the judgment of the court." Id. The
affirmative finding also delays the defendant's eligibility for parole and prevents his release to
mandatory supervision. Tex. Gov't Code Ann. §§ 508.145(d), .149(a)(1) (West Supp. 2002).
2. The court of criminal appeals has said the same thing more succinctly: "The objective . . . is
to keep guns and criminals separate." Gale v. State, 998 S.W.2d 221, 225 n.7 (Tex. Crim. App.
1999).
3. The United States Supreme Court has given the term "use," as it appears in an analogous
federal statute, a narrower construction than that endorsed in Patterson. See Bailey v. United States,
516 U.S. 137, 148-50 (1995). The court of criminal appeals has explained, however, that due to
differences in the wording of the two statutes, "the Bailey decision does not substantially affect the
continued application of Patterson as precedent for the definition of 'use' in Texas jurisprudence." 
Gale, 998 S.W.2d at 225.
4. Consider, for example, if the police had found in the trunk of appellant's car firearms,
ammunition, scales, small plastic bags of the sort used by drug dealers, a large quantity of cash, and
a notebook containing records of appellant's purchases and sales of controlled substances--in short,
everything associated with the sale of cocaine and methamphetamine except the drugs themselves.