# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00663-CR

**Ramiro Hinojosa, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT
NO. 01-184-K368, HONORABLE BURT CARNES, JUDGE PRESIDING**

Appellant Ramiro Hinojosa pleaded guilty before a jury to a two-count indictment accusing him of possessing more than four grams of cocaine and more than four grams of methamphetamine, in both cases with intent to deliver. *See* Tex. Health & Safety Code Ann. ' 481.112(a), (d) (West Supp. 2002). Appellant pleaded not true to the allegation that he used or exhibited a firearm in the commission of the offenses. After hearing evidence, the jury assessed punishment at imprisonment for forty-five years and affirmatively found that a firearm was used in the commission of the offenses.

Appellant contends the district court erred by refusing to place the witnesses under the witness exclusion rule until after opening statements and by refusing to separately try the deadly weapon and punishment issues. He also contends the evidence is legally insufficient to support the deadly weapon finding. We will overrule these contentions and affirm the conviction.

Appellant invoked the witness exclusion rule after the jury was selected and sworn, but the court denied appellant=s request that the witnesses be excluded before the parties= opening statements. Instead, the court placed the rule into effect at the conclusion of the statements, immediately before testimony began.

Evidence rule 614 provides that at the request of a party, Athe court shall order witnesses excluded so that they cannot hear the testimony of other witnesses.@ Tex. R. Evid. 614.  By its terms, the rule applies only to witness testimony.  *See Creel v. State*, 493 S.W.2d 814, 820 (Tex. Crim. App. 1973) (rule does not require exclusion of witnesses during jury voir dire and before trial testimony begins).  No violation of rule 614 is shown.  Even if the court erred by permitting the witnesses to hear the opening statements, appellant=s substantial rights were not affected.  *See* Tex. R. App. P. 44.2(b); *see also Moore v. State*, 882 S.W.2d 844 (Tex. Crim. App. 1994) (applying harmless error rule to witness rule violation).  During her opening statement, the prosecutor discussed the facts of the case in very general terms.  None of the facts she mentioned were disputed.  The statement could not have influenced the testimony of any witness in a manner prejudicial to appellant.  Point of error one is overruled.

The court also denied appellant=s request that the trial be bifurcated into a Aguilt-innocence@ phase, at which the deadly weapon issue would be tried, followed by a punishment phase.  Instead, all testimony was heard during a single proceeding, after which the court submitted the deadly weapon special issue to the jury together with the question of punishment.

The statute providing for bifurcated trials does not apply to pleas of guilty.  *Basaldua*, 481 S.W.2d 851, 853 (Tex. Crim. App. 1972).  Thus, the trial before a jury on a defendant=s guilty plea is a

unitary trial, not a bifurcated one. *Wilkerson v. State*, 736 S.W.2d 656, 659 (Tex. Crim. App. 1987);

*Basaldua*, 481 S.W.2d at 852-53. Appellant relies on a statement by the court of criminal appeals that it is

the Abetter practice@ to submit the deadly weapon issue at the guilt-innocence phase. *Hill v. State*, 913

S.W.2d 581, 586 (Tex. Crim. App. 1996). *Hill*, however, was a trial on a plea of not guilty and has no

application here. *And see Fann v. State*, 702 S.W.2d 602, 604-05 (Tex. Crim. App. 1986) (op. on

reh=g) (better practice is to submit deadly weapon issue at punishment phase). No error is shown and point

of error two is overruled.

Finally, appellant contends the evidence does not support the deadly weapon finding. *See*

Tex. Code Crim. Proc. Ann. art. 42.12, ' 3g(a)(2) (West Supp. 2002).[1] We must determine if, viewing all

the evidence in the light most favorable to the verdict, any rational trier of fact could have found beyond a

reasonable doubt that appellant used or exhibited a firearm during the commission of these offenses. *See*

*Gale v. State*, 998 S.W.2d 221, 224 (Tex. Crim. App. 1999).

---

[1] A defendant is ineligible for judge-ordered community supervision Awhen it is shown that a deadly weapon . . . was used or exhibited during the commission of a felony offense.@ Tex. Code Crim. Proc. Ann. art. 42.12, ' 3g(a)(2) (West Supp. 2002). An affirmative finding that the defendant used a firearm or other deadly weapon must be Aenter[ed] . . . in the judgment of the court.@ *Id.* The affirmative finding also delays the defendant=s eligibility for parole and prevents his release to mandatory supervision. Tex. Gov=t Code Ann. '' 508.145(d), .149(a)(1) (West Supp. 2002).

3

On the morning of November 2, 2000, several law enforcement officers executed a warrant to search a house in rural Williamson County. Appellant, the only occupant of the house, was in the bedroom. In that room, the officers found a small plastic bag containing what proved to be cocaine and a wallet containing $4900 in cash. Other containers of what proved to be either cocaine or methamphetamine were found in the hall closet of the house, on a shelf in the detached garage, under the hood of a car parked by the house, and in a nearby pile of trash. In total, the officers found 196.32 grams of cocaine and 29.36 grams of methamphetamine, much of it in small packages as if for sale.

An unloaded .22 rifle and a digital scale were found on a pool table in the living room house. Two more scales were found in the kitchen. Inside the locked trunk of a second car parked inside the garage, the officers found a triple-beam scale, an unloaded .30-.30 rifle, an unloaded .45 pistol, and two boxes of .45 bullets. $5000 in cash was found on the floor of the garage. Although other bullets were found during the search, none fit the two rifles. An experienced narcotics officer testified that it is common for drug dealers to have a firearm available to protect the drugs and cash received from sales.

The car in which controlled substances were found was registered to appellant. The car in the garage was unregistered and appeared to be inoperable. Appellant rented the house and had occupied it for about six months.

There is no evidence that appellant exhibited a firearm, so the question is whether he used one or more of the weapons during the commission of the offenses for which he was convicted. The purpose of denying probation and delaying parole eligibility for those who use a deadly weapon is to Adiminish the danger to human life that could be expected to arise in the circumstances that attend a felony

**4**

offense when its commission is accompanied by a deadly weapon.@ *Patterson v. State*, 723 S.W.2d 308, 315 (Tex. App.CAustin 1987), *aff=d*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989).[2] The phrase Aused . . . during the commission of a felony offense@ must be Asufficiently flexible to accommodate any felony offense falling within the purpose of the statute.@ *Id*. at 314 (italics omitted). This Court concluded in *Patterson* that Athe statutory expression >used . . . during the commission of a felony offense= refers certainly to the wielding of a firearm with effect, but it extends as well to *any* employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony.@ 723 S.W.2d at 315. In affirming this Court=s opinion, the court of criminal appeals quoted this passage with approval. *Patterson*, 769 S.W.2d at 941.[3]

In *Patterson*, the defendant was one of several persons in a room containing drugs and drug paraphernalia. *Id*. at 311. He was sitting on a couch with a loaded .45 revolver concealed beside his

---

[2] The court of criminal appeals has said the same thing more succinctly: AThe objective . . . is to keep guns and criminals separate.@ *Gale v. State*, 998 S.W.2d 221, 225 n.7 (Tex. Crim. App. 1999).

[3] The United States Supreme Court has given the term Ause,@ as it appears in an analogous federal statute, a narrower construction than that endorsed in *Patterson*. *See Bailey v. United States*, 516 U.S. 137, 148-50 (1995). The court of criminal appeals has explained, however, that due to differences in the wording of the two statutes, Athe *Bailey* decision does not substantially affect the continued application of *Patterson* as precedent for the definition of >use= in Texas jurisprudence.@ *Gale*, 998 S.W.2d at 225.

leg. *Id*. Because the defendant had the revolver ready at hand and in close proximity to the drugs, and because there was no evidence of a lawful purpose behind the drawn revolver, this Court concluded that a rational trier of fact could find that he used the weapon Ain a sense that the firearm protected and facilitated [his] care, custody, and management of the contraband.@ *Id*. at 315.

In *Gale*, the court of criminal appeals upheld an affirmative finding in the context of a prosecution for possession of marihuana. In that case, over twenty pounds of marihuana (in small packages), three unloaded rifles, an unloaded handgun, ammunition for the weapons (including a loaded clip), and $4500 cash were found in the defendant=s closet. 998 S.W.2d 221 at 223. The court held that a jury could rationally find that the defendant used the weapons in the commission of the offense citing: the large quantity of marihuana clearly possessed for sale; the presence of the weapons in the same closet and only inches away from the marihuana; and police testimony that drug traffickers use firearms to protect their drugs and money and that the weapons in question could be quickly loaded. *Id*. at 225-26.

Appellant argues that in order to find that a weapon was used to facilitate the commission of unlawful drug possession, the weapon must be found either near the defendant (as in *Patterson*) or near the controlled substance (as in *Gale*). He urges that because the firearms in this cause were neither found with the controlled substances nor found on or near appellant, the evidence does not support the affirmative finding. *See Beal v. State*, 35 S.W.3d 677, 686 (Tex. App.CHouston [1st Dist.] 2000, pet. granted) (handgun in car with defendant and methamphetamine); *Dimas v. State*, 987 S.W.2d 152, 154-55 (Tex. App.CFort Worth 1999, pet. ref=d) (loaded rifles inches from cocaine); *Moreno v. State*, 978 S.W.2d 285, 289 (Tex. App.CFort Worth 1998, no pet.) (handgun and rifle next to cocaine); *Charles v. State*,

915 S.W.2d 238, 241 (Tex. App.СBeaumont 1996, pet. ref≠d) (loaded pistol in room where drugs found); *Sanchez v. State*, 906 S.W.2d 176, 181 (Tex. App.СFort Worth 1995, pet. ref≠d) (rifles in closet with cocaine); *Henton v. State*, 893 S.W.2d 165, 167 (Tex. App.СHouston [1st Dist.] 1995, no pet.) (defendant holding pistol as police entered to execute search); *Ramirez v. State*, 822 S.W.2d 240, 245 (Tex. App.СHouston [1st Dist.] 1991, pet. ref≠d) (defendant carrying loaded pistol when making delivery).

We agree that the factors cited by appellant support an affirmative finding, but we do not agree that they are always necessary for such a finding.[4] Ultimately, the sufficiency of the evidence must be determined on a case-by-case basis. Appellant admitted possessing a large quantity of cocaine and methamphetamine with the intent to deliver. The evidence shows that appellant used the entire premisesСthe house and the surrounding curtilageСin his criminal enterprise. The rifles, pistol, and ammunition for the pistol were found with scales the jury could reasonably believe were used by appellant to weigh the controlled substances. While not in the trunk of the car with the firearms and scales, drugs and cash were found in the garage in which the car was parked. The main cache of drugs was found in a second car parked outside the garage. In short, the firearms were not found in a place completely separate from the criminal enterprise. *Compare Gale*, 998 S.W.2d at 226. Although appellant≠s ownership of the

---

[4] Consider, for example, if the police had found in the trunk of appellant≠s car firearms, ammunition, scales, small plastic bags of the sort used by drug dealers, a large quantity of cash, and a notebook containing records of appellant≠s purchases and sales of controlled substancesСin short, everything associated with the sale of cocaine and methamphetamine except the drugs themselves.

weapons was not positively shown, the jury could reasonably conclude from the circumstances that they belonged to him.  In light of the testimony of the narcotics officer, the jury could rationally conclude that the firearms were, like the scales, a tool of appellant=s trade.

Viewing all the evidence in the light most favorable to the jury=s finding and taking all the relevant factors into consideration, we conclude that it would be rational for a fact-finder to determine that appellant used the weapons, or at least the pistol for which he had ammunition, to protect his drugs and cash, and hence to facilitate his possession and delivery of the controlled substances.  Point of error three is overruled.

The judgment of conviction is affirmed.

_____

David Puryear, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed:   September 12, 2002

Do Not Publish

**8**