NO. 07-02-0432-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



APRIL 10, 2003


______________________________



BRETT MORGAN TURNER
,




 Appellant


v.



THE STATE OF TEXAS, 




 Appellee

_________________________________



FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;



NO. 41,584-E; HON. ABE LOPEZ, PRESIDING


_______________________________



Before QUINN, REAVIS, and CAMPBELL, JJ.

 Appellant Brett Morgan Turner appeals from an order revoking his community
supervision. In doing so, he contends the trial court erred in failing to inquire into his
competency to stand trial. We affirm the judgment of the trial court.

 Background

 Appellant was indicted for the offense of possession of a controlled substance in
an amount of less than one gram. He pled guilty, and on April 26, 2000, the trial court
deferred adjudication and placed him on community supervision for two years. In July
2001, the State filed a motion to proceed with adjudication of guilt because of appellant's
violation of the terms of his community supervision. On November 15, 2001, the trial court
adjudicated appellant's guilt and sentenced him to two years in a state jail facility but
suspended the sentence and placed him on community supervision for five years. 
Subsequently, the State filed a motion and then amended motions to revoke the
community supervision. At the hearing, the State dropped one of the alleged violations,
and appellant pled true to the remaining violations. The trial court then revoked
appellant's community supervision and sentenced him to 20 months in a state jail facility. (1) 

 Competency

 In his sole issue, appellant contends the trial court erred in failing to conduct an
inquiry into his competency to stand trial during the hearing on the revocation of his
probation when there was evidence that he suffered from schizophrenia. We overrule the
issue.

 A person is incompetent to stand trial if he does not have 1) sufficient present ability
to consult with his lawyer with a reasonable degree of rational understanding or 2) a
rational as well as factual understanding of the proceedings against him. Tex. Code Crim.
Proc. Ann. art. 46.02 §1A(a) (Vernon Supp. 2003). If, during trial, evidence of the
defendant's incompetency is brought to the attention of the trial court from any source, the
court must conduct a hearing to determine whether there is evidence to support a finding
of incompetency to stand trial. (2) Id. §2(b) (Vernon 1979). A trial court should conduct a
§2(b) competency inquiry sua sponte only if the evidence brought to the trial court's
attention raises a bona fide doubt in the mind of the judge as to the defendant's
competency to stand trial. Alcott v. State, 51 S.W.3d 596, 601 (Tex. Crim. App. 2001). 
Moreover, only after such inquiry is the court required to determine whether there is
evidence to support a finding of incompetency which would then require a competency
hearing before a jury. Id. Generally, bona fide doubt exists only if the evidence indicates
recent severe mental illness, moderate mental retardation, or truly bizarre acts by the
defendant. McDaniel v. State, No. 744-02, 2003 Tex. Crim. App. Lexis 45, slip. op. at 1
(Tex. Crim. App. Feb. 26, 2003); Alcott v. State, 51 S.W.3d at 599 n.10; Reeves v. State,
46 S.W.3d 397, 399 (Tex. App.--Texarkana 2001, pet. dism'd). 

 In this instance, appellant testified that he had been diagnosed in the past with
schizophrenia for which he had been prescribed medication but which he was not taking. 
He also stated he had been in the Pavilion mental health facility seven or eight times and
in a state mental hospital one time. Appellant's mother additionally testified that he had
been a paranoid schizophrenic "[o]n and off . . . for the last 15 years" and that when he did
not take his medication, he "does not remember what he has done," and "does not sleep." 
 Evidence of prior hospitalization and treatment for depression or mental impairment
does not require a competency hearing when there is no evidence that the defendant is
incapable of consulting with counsel or understanding him. Moore v. State, 999 S.W.2d
385, 395 (Tex. Crim. App. 1999), cert. denied, 530 U.S. 1216, 120 S.Ct. 2220, 147 L.Ed.2d
252 (2000). Nor does the fact that the accused, at one time in the past, was diagnosed
as a schizophrenic obligate the court to inquire into his current competency. Lingerfelt v.
State, 629 S.W.2d 216, 217 (Tex. App.-Dallas 1982, pet. ref'd). Similarly, the decision to
abstain from taking medication prescribed to ameliorate a mental condition does not trigger
a duty to inquire, absent evidence of recent manifestation of the mental condition. (3) Again,
evidence of recent severe mental illness, bizarre acts, or mental retardation must exist. 
Moore v. State, 999 S.W.2d at 395. And, that is lacking at bar.

 Instead, the record shows that despite his purported schizophrenia, appellant was
quite lucid and direct when responding to questions from his counsel and the prosecutor. 
His answers were not only appropriate to the question but also indicative of intelligence. 
Clear, lucid testimony is an important factor in determining competency. McDaniel v.
State, slip op. at 16. Indeed, at times he perceived inaccuracies in the questions he was
being asked and corrected both his own attorney and the prosecutor. And, while appellant
characterizes that conduct as suggestive of confusion and an inability to "follow[] the
questions posed," it actually portrays comprehension, analysis, and independence of
thought. When those characteristics are deemed to evince incompetency is when we are
doomed. 

 In sum, no evidence within the category required by McDaniel and Moore appears
of record. Since nothing was before the trial court sufficient to raise a bona fide doubt as
to appellant's competency, it did not err in failing to inquire into the matter. Accordingly,
the issue is overruled, and the judgment of the trial court is affirmed.

 

 Brian Quinn

 Justice


Do not publish.











 
1. The State raises the issue whether this court has jurisdiction of the appeal since appellant filed a
general notice of appeal. However, the appeal is limited to a single issue which is unrelated to his
conviction. See Woods v. State, 68 S.W.3d 667, 669 (Tex. Crim. App. 2002); Feagin v. State, 967 S.W.2d
417, 419 (Tex. Crim. App. 1998). Therefore, appellant may appeal from the order revoking his probation
without having to meet the requirements of Rule of Appellate Procedure 25.2(b)(3) as it was in effect at the
time this notice of appeal was filed in October 2002. See Feagin v. State, 967 S.W.2d at 419 (holding that
Rule 40(b)(1), the predecessor to the version of Rule 25.2 in effect for this appeal, is inapplicable to appeals
attacking the propriety of an order revoking probation). 
2. A probation revocation hearing is a trial for purposes of competency issues. Thompson v. State,
654 S.W.2d 26, 28 (Tex. App.--Tyler 1983, no pet.) (holding that due process requires that no person shall
have his probation revoked while incompetent); see also Reeves v. State, 46 S.W.3d 397, 399 (Tex. App.--
Texarkana 2001, pet. dism'd) (the court addressed the trial court's failure to conduct a competency hearing
with respect to the revocation of the defendant's probation). 
3. This is particularly so when the only testimony as to appellant's behavior when he failed to take his
medicine was that he did not sleep and did not always remember what he had done.



l, referred to in the record as a “known drug dealer,”
stayed at the house occasionally and was there just before the police arrived, cooking crack
cocaine. Appellant’s testimony also suggested Campbell was angry with him and had
reasons to “get” appellant.
          After hearing the evidence presented, the judge found it sufficient to show appellant
used the pistol to facilitate his possession and distribution of contraband and entered a
deadly weapon finding for each offense.


 On appeal, through six issues, appellant
challenges the legal and factual sufficiency of the evidence to support the deadly weapon
finding in each cause. We affirm.
                                                                Analysis          By appellant’s six issues, he contends the evidence presented did not show that the
gun was his, that it was in close proximity to drugs, that he was the sole occupant of the
house, or that other evidence directly linked him to the gun. 
Evidentiary Sufficiency Supporting Deadly Weapon Finding 
          To review evidence for legal sufficiency, we must view the evidence in the light most
favorable to the verdict and determine if a rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. See Narvaiz v. State, 840 S.W.2d 415,
423 (Tex.Crim.App.1992), cert. denied, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791
(1993) citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560
(1979).
          A factual sufficiency review requires us to view all of the evidence in a neutral light
and ask whether the jury was rationally justified in finding guilt (or an affirmative finding)
beyond a reasonable doubt. Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). 
We apply the same analysis to evidence supporting an affirmative deadly weapon finding. 
See Mendez v. State, No. 01-07-00680-CR, 2008 WL 5263415, *2 (Tex.App.–Houston [1st
Dist.] Dec. 18, 2008, no pet.) (mem. op., not designated for publication) (conducting
sufficiency review of evidence supporting deadly weapon finding). Evidence is factually
insufficient when the evidence supporting the conviction is so weak that the verdict seems
clearly wrong and manifestly unjust, or the evidence supporting the conviction is outweighed
by the great weight and preponderance of the contrary evidence so as to render the verdict
clearly wrong and manifestly unjust. Grotti v. State, 273 S.W.3d 273, 283 (Tex.Crim.App.
2008); Roberts v. State, 220 S.W.3d 521, 524 (Tex.Crim.App. 2007); Sanchez v. State, 243
S.W.3d 57, 72 (Tex.App.–Houston [1st Dist.] 2007, pet. ref’d). Our evaluation should not
intrude upon the fact finder's role as the sole judge of the weight and credibility given to any
witness's testimony. See Fuentes v. State, 991 S.W.2d 267, 271 (Tex.Crim.App.1999). The
weight to be given contradictory testimonial evidence is within the sole province of the
fact-finder. See Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); Cain v. State, 958
S.W.2d 404, 408-09 (Tex.Crim.App. 1997). In conducting a factual-sufficiency review, we
must discuss the evidence that, according to the appellant, most undermines the trial court's
findings. See Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).
          An affirmative deadly weapon finding may be made when the State establishes, inter
alia, (1) that a deadly weapon was used or exhibited during the commission of a felony
offense or (2) that the defendant was a party to the offense and knew that a deadly weapon
would be used or exhibited.


 Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (Vernon Supp.
2008). Any employment of a firearm or other deadly weapon, even its simple possession, to
facilitate the commission of another offense constitutes a "use" of the weapon. Patterson v.
State, 769 S.W.2d 938, 941 (Tex.Crim.App.1989).
          In Patterson, officers executing a search warrant found the defendant sitting on a
couch near a table on which methamphetamine was located. Id. at 939. A pistol was on the
couch beside the defendant's leg. Id. The court held that the evidence supported a finding
that the defendant used the pistol to facilitate his possession of the methamphetamine. Id.
at 942. In Gale v. State, twenty pounds of marihuana, several unloaded firearms, and
ammunition for those firearms were found in the bedroom closet of the defendant's house.
Gale v. State, 998 S.W.2d 221, 223 (Tex.Crim.App.1999). The court held that the evidence
supported a finding that the defendant used the weapons to facilitate his possession of the
marijuana. Id. at 226. In Coleman v. State, drugs and drug paraphernalia were found
throughout the defendant's residence. Coleman v. State, 145 S.W.3d 649, 650-51
(Tex.Crim.App. 2004). In a bedroom, officers found a pistol, a rifle, and a safe containing
bottles of PCP and a large amount of money. Id. at 651. The court held that a rational trier
of fact could find that the defendant used the firearms to facilitate his possession and
distribution of the drugs. Id. at 655. In Wynn v. State, the court reversed a deadly weapon
finding because the defendant was charged as a party to the offense and the evidence
showed he was not in the house with the drugs and guns, he was not the only occupant of
the house, the owner of the guns was not determined, and no guns or drugs were found in
the only room connected with the defendant. Wynn v. State, 847 S.W.2d 357, 360-61
(Tex.App.–Houston [1st Dist.] 1993), aff’d, 864 S.W.2d 539 (Tex.Crim.App. 1993).
          Courts have recognized that it is common for narcotics dealers to possess firearms for
the purpose of protecting themselves because they possess large amounts of drugs and
cash. See, e.g., Moreno v. State, 978 S.W.2d 285, 289 (Tex.App.–Fort Worth 1998, no pet.).
See also Wilson v. State, 132 S.W.3d 695, 698 (Tex.App.–Amarillo 2004, pet. ref’d)
(recognizing it is “rather settled” that weapons are associated with the drug trade). The Court
of Criminal Appeals has noted that a firearm is “used” during the commission of the felony
offense of possessing contraband in the sense that the firearm protects and facilitates the
care, custody and management of the contraband. Gale, 998 S.W.2d at 224. See also
Dimas v. State, 987 S.W.2d 152, 154-55 (Tex.App.–Fort Worth 1999, pet. ref’d) (narcotics
supervisor testified it was customary for drug dealers to have firearms and “use” them to
protect themselves, their drugs, and their money). 
          Appellant argues his case is distinguishable from Patterson, and is more similar to
Wynn. He points to evidence showing he was not the only occupant of the house, and that
his girlfriend knew the location of the $8000 hidden in the bathroom. But the evidence shows
appellant was the primary occupant of the small house. Among the items police found there
was a rent receipt in appellant’s name. Appellant testified his relationship with his girlfriend
was of long standing, and testified she, like appellant, sold marijuana. Neither her presence
in the house nor her knowledge of the hidden cash weakens the incriminating inferences
properly drawn from the presence of the pistol in the bedroom. See also Charles v. State, 915
S.W.2d 238, 241 (Tex.App.–Beaumont 1996, pet. ref'd) (also distinguishing Wynn). 
          Appellant also points out the evidence of the locations at which the different drugs were
found in the house is not specific, and argues there is thus no evidence the pistol and the
drugs were found in close proximity. We disagree. Appellant testified the marijuana blunts
were in the dresser drawer, and other evidence also shows marijuana in the bedroom. 
Appellant also testified powder cocaine and additional marijuana were found in the refrigerator
in the kitchen. While the pistol was not in the same container as any of the drugs, it was found
very near the dresser. Further, the bedroom and the kitchen of the house were immediately
adjacent, so the pistol was within feet of the drugs located there. 
          Citing Wynn, appellant also argues there is no evidence his fingerprints were found on
the gun or in the room where it was found, others had access to the house and no evidence
shows he owned the gun. Appellant is correct the record contains no fingerprint evidence. 
But fingerprint evidence was unnecessary to establish that appellant lived in the one-bedroom
house, that the room in which the pistol was found was his bedroom, and that the backpack
containing the pistol was on the floor along the wall between the bedroom and the bathroom,
covered by a blanket. Appellant testified to those facts. Appellant denied the gun was his, but
it was in his bedroom among other items he acknowledged were his, and the trial court was
not required to accept his denial. See Cain, 958 S.W.2d at 408-09.
          By his guilty plea, appellant admitted he possessed the cocaine and methamphetamine
with the intent to distribute it. He also plead guilty to possession of marijuana and testified he
sold marijuana blunts, and “a block of weed with a whole bunch of rolled up blunts” were in the
bedroom dresser. The gun was found inside the nearby backpack in a Crown Royal bag, and
appellant acknowledged ownership of the $8000 cash found in another stashed Crown Royal
bag. Based on the standard discussed in Patterson, 769 S.W.2d at 941, the fact-finder could,
from the evidence it heard, infer that appellant was in possession of the gun found in his
bedroom and it was used to protect and facilitate his possession of drugs. See Hooper v.
State, 214 S.W.3d 9, 15 (Tex.Crim.App. 2007) (discussing permissible inferences). The nature
of the weapon supports that conclusion. See Coleman, 145 S.W.3d at 655 (Cochran, J.,
concurring). 
          Viewing all the evidence in light most favorable to the judge’s verdict, we find that the
evidence is sufficient to allow the fact finder to determine beyond a reasonable doubt that
appellant possessed the weapon and used it to facilitate possession and intended distribution
of marijuana, cocaine, and methamphetamine. Accordingly, we find the evidence legally
sufficient to support the trial court’s finding that appellant used a deadly weapon during the
commission of the three drug offenses. Appellant’s first three issues are overruled.
          On the same evidence, we find the evidence is also factually sufficient to support the
trial court’s affirmative deadly weapon findings. Appellant testified that his girlfriend and
Campbell had access to his home, and effectively argues the gun could have belonged to
either of them. As noted, he also testified Campbell was out to “get” him. Viewing the
evidence in a neutral light, we find that favoring the findings is not so weak, nor the contrary
evidence appellant emphasizes so strong, as to make the trial court’s findings clearly wrong
or manifestly unjust. Accordingly, we hold that the evidence is factually sufficient to support
the finding that appellant used a deadly weapon during the commission of the three narcotics
offenses. We overrule appellant’s fourth, fifth and sixth issues.
          Having overruled appellant’s issues, we affirm the trial court’s judgment.
 
 
 
                                                                           James T. Campbell

                                                                                    Justice

 
 
 

 
Do not publish.