# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00842-CR

**Rodolfo Cipriano Gomez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR2003-159, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Rodolfo Cipriano Gomez of engaging in a criminal activity, *see* Tex. Penal Code Ann. § 71.02 (West Supp. 2008), and the trial court sentenced him to sixty years' imprisonment. He appeals, complaining that the evidence is insufficient to support the conviction and the deadly-weapon finding, the trial court erred in allowing testimony related to a conversation appellant had with a police officer, and the court erred in denying appellant's motion to suppress. We affirm the trial court's judgment of conviction.

Appellant was convicted of engaging with his brother, Arnaldo Gomez, and his sister, Sandra Gomez, in the crime of drug possession with the intent to deliver. *See id.* The house from which the drugs were sold was at one point owned by Sandra,[1] and she arranged for utility service

---

[1] The State introduced deed records showing that Sandra, together with Ricardo Gomez, acquired the house in 1980 and that Sandra alone deeded it to her sister in 1991.

at the house in her name. When Sandra signed up for utility service, she paid a $100 deposit and stated she was unemployed. After four controlled buys by a confidential informant ("CI"), the police obtained and executed a search warrant for the house, where they found twenty grams of heroin; more than twenty-five grams of cocaine; more than 150 grams of marihuana; a rifle, .22 handgun, and .38 handgun, all loaded; ammunition for the three firearms; surveillance equipment; $5,656 in cash; a wallet containing two bills that the CI had used for his controlled buys and appellant's expired driver's license, social security card, and temporary driving permit; syringes; an electronic scale, balloons, and "corner baggies," which drug dealers use to package drugs; and utility bills for the house addressed to Sandra and letters mailed to Arnaldo and appellant at the house. The scale and balloons were in the kitchen, and syringes and a bowl of marihuana were in the living room. Appellant and his siblings were all present at the house when the warrant was executed and were arrested, along with three other people who were present. When they were arrested, Arnaldo and Sandra had track marks on their arms; appellant did not.

Appellant was tried separately from his siblings, but all three were represented by separate attorneys at a joint hearing on a motion to suppress, where they raised the same arguments attacking the search warrant. The trial court denied the motion to suppress, and Arnaldo was the first to go trial. He was convicted, and this Court affirmed the conviction, overruling challenges to the sufficiency of the evidence, the warrant, and the admission of certain evidence. *See Gomez v. State*, No. 03-05-00730-CR, 2007 Tex. App. LEXIS 8853 (Tex. App.—Austin Nov. 9, 2007, pet. ref'd) (not designated for publication).

2

In his first two issues, appellant argues that the evidence is legally and factually insufficient to support the jury's judgment of conviction. He contends that the State did not prove that Sandra, who was the third person alleged in the criminal combination, agreed or conspired to participate in criminal activity. We disagree.

Under section 71.02 of the penal code, a person engages in a criminal activity if, "with the intent to establish, maintain or participate in a combination or in the profits of a combination or as a member of a criminal street gang, he commits or conspires to commit" the "unlawful manufacture, delivery, dispensation, or distribution of a controlled substance or dangerous drug." Tex. Penal Code Ann. § 71.02(a)(5). A combination is "three or more persons who collaborate in carrying on criminal activities." *Id*. § 71.01(a) (West 2003). In assessing the legal sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict, including reasonable inferences that can be drawn from it, and ask whether a rational juror could have found the essential elements of the offense beyond a reasonable doubt. *Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007). In considering factual sufficiency, we consider the evidence in a neutral light and will overturn a verdict only if it is clearly wrong or manifestly unjust or against the great weight and preponderance of the evidence. *See id.*

As in Arnaldo's appeal, in which he argued the evidence was insufficient to show that Sandra was a participant, there was no direct evidence of her participation in the drug buys. However, as in Arnaldo's appeal, we hold that the jury could rationally have inferred that she was involved in and participating in the criminal activity. *See Gomez*, 2007 Tex. App. LEXIS 8853, at *12-13. Sandra was present at the time of the search and had track marks on her arms; she arranged

3

for utility service at the house; firearms, drugs, drug paraphernalia, and items used to package drugs for sale were found in plain view; and there was evidence that her brothers lived in the house. The jury could have inferred that the three siblings were aware of and actively involved in the manufacture, delivery, dispensation, or distribution of illegal drugs. *See id*. Thus, the evidence is legally and factually sufficient to support the jury's verdict. We overrule appellant's first two issues.

In his third issue, appellant argues that the evidence is insufficient to support the trial court's deadly-weapon finding, which was entered following the punishment hearing.

When punishment is determined by the trial court, the trial court "is the trier of fact as to the punishment issues. An affirmative finding can be and is perhaps more suited to be a punishment issue." *Fann v. State*, 702 S.W.2d 602, 604-05 (Tex. Crim. App. 1985) (op. on reh'g); *see also Flores v. State*, 690 S.W.2d 281, 283 (Tex. Crim. App. 1985) ("As the trier of facts [at punishment], the trial court had the power to add the affirmative finding to the judgment if the facts showed and he believed that the appellant himself used or exhibited a deadly weapon during the commission of this offense."). A defendant may be found to have "used" a firearm to commit the offense of drug possession "in a sense that the firearm protected and facilitated appellant's care, custody, and management of the contraband." *Patterson v. State*, 723 S.W.2d 308, 315 (Tex. App.—Austin 1987), *aff'd*, 769 S.W.2d 938, 942 (Tex. Crim. App. 1989).

At the guilt-innocence stage, the State introduced photographs and testimony about the three guns found in the house. A loaded .22 Ruger rifle and a loaded .22 Ruger handgun were found in one bedroom, labeled "bedroom 4" by the police; a loaded two-shot .38 derringer handgun was found in another bedroom; and ammunition for the three guns was found in the house. At the

4

punishment hearing, Petra Gaytan testified that she had been to the house several times to buy drugs. She had seen guns in the house and said bedroom 4 was appellant's room. She believed that the .22 handgun belonged to appellant and testified that appellant "had a little bottle of drugs on his dresser and also the gun was set on his dresser." She further testified that at the time of the raid, she was in bedroom 4 with appellant, who was about to give her some heroin.[2]

Appellant notes that there was no testimony that the CI ever saw guns during the controlled buys and argues that there was no evidence "to show any use of the firearm to facilitate this offense." He contends that the mere presence of the guns in the house with the drugs cannot support a deadly-weapon finding.

Our analysis, however, is guided by the majority in *Coleman v. State*, 145 S.W.3d 649, 652-55 (Tex. Crim. App. 2004). Coleman was detained after police grew suspicious about his activities while he sat in his truck, approached him, and smelled the odor of PCP in the truck. *Id.* at 650. The officers searched the truck but found no contraband. *Id.* They then searched Coleman's house, where he lived by himself, finding illegal drugs, two rifles, and a pistol. *Id.* at 650-51. The court of criminal appeals held that the evidence was legally sufficient to support a deadly-weapon finding despite the fact that Coleman was handcuffed in a patrol car outside the house when the guns and drugs were found. *Id*. at 654-55. It held that a rational fact-finder "could have found that [Coleman] 'used' the weapons in order to facilitate his possession and distribution of the narcotics." *Id.* at 655.

---

[2] Gaytan, her boyfriend, and one other man were arrested with the Gomezes.

Although there was no testimony about whether the three guns were of the sort frequently used by drug dealers to conduct their illegal business and there was evidence that two other people lived in the house with appellant, we hold that the evidence was sufficient to support the trial court's finding. *See id.* at 651, 655; *Gale v. State*, 998 S.W.2d 221, 223 (Tex. Crim. App. 1999) (police officers testified that drug dealers use firearms to protect drugs and money, and unloaded firearms were found in closet with drugs, cash, and ammunition). Three loaded guns were found in two bedrooms. Gaytan testified that bedroom 4 was appellant's bedroom and that she thought the .22 Ruger handgun belonged to appellant. She further testified that when the police entered the house, she and appellant were in bedroom 4, where appellant was about to hand her heroin and where the .22 handgun and rifle were found. Ammunition for the three guns was found in the house, which was occupied by appellant and his siblings and was used by them for drug dealing. Thus, the evidence was legally and factually sufficient for the trial court to find that appellant used the weapons found in the house to facilitate his possession and distribution of the drugs. *See Coleman*, 145 S.W.3d at 654-55; *Gale*, 998 S.W.2d at 223. We overrule appellant's third issue.

In his fourth issue, appellant complains that the trial court should not have allowed testimony that appellant threatened the life of the CI. He argues that the evidence was more prejudicial than probative and should have been excluded. *See* Tex. R. Evid. 403.

Officer Rick Sanchez is employed by the Comal County Sheriff's Office and testified that he has known appellant for about half his life. He testified that after the hearing on the motion to suppress, appellant approached him and asked who the CI was, saying, "All we want to know is

who the informant is. Just tell me if it's Rico Willis so I can take him out." Sanchez took that to mean that appellant meant to kill Willis if Willis was the CI and testified that although appellant was smiling during the conversation, Sanchez thought appellant was serious about the threat.

Assuming it was error to admit the testimony, which was not particularly probative as to whether appellant committed the charged offenses, we hold that the evidence was not unfairly prejudicial. *See Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh'g). When a trial court commits non-constitutional error, we ask whether the error affected the defendant's substantial rights. Tex. R. App. P. 44.2(b); *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). In determining whether the defendant's substantial rights were harmed, we look at the entire record, including all testimony and physical evidence, the character of the error and how the jury might have taken it in light of the other evidence, jury instructions, the State's theory and arguments, and any defensive theories. *Motilla*, 78 S.W.3d at 355-56.

Although we note that the State referred to Sanchez's testimony in closing statements, in light of the entire record and the substantial evidence against appellant, we have a fair assurance that the testimony did not prejudice appellant's substantial rights. *See id*. at 355; *Montgomery*, 810 S.W.2d at 389. We overrule appellant's fourth issue.

In his fifth issue, appellant complains that the trial court should have suppressed the evidence seized during the search, arguing that the affidavit on which the warrant was based contained misstatements of fact and that, if the misstatements are disregarded, the remaining allegations are insufficient to support a finding of probable cause. Specifically, he makes the following complaints: that the affiant, Officer Juan Guerrero, did not personally search the CI before

7

each controlled buy as he recited in the affidavit; that there is a "lack of information concerning the reliability and credibility of the CI"; and that appellant and his brother were not associated with the Mexican Mafia, as stated by Guerrero in the affidavit. These issues were raised by and decided against appellant's brother in his appeal. *See Gomez*, 2007 Tex. App. LEXIS 8853, at *14-31. The motion to suppress was filed and argued jointly by appellant and his siblings, and the motion was considered at one joint hearing, at which the same evidence was presented. We therefore follow our opinion in *Gomez* and overrule appellant's fifth issue.

Having overruled appellant's issues on appeal, we affirm the trial court's judgment of conviction.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Puryear and Henson

Affirmed

Filed: October 16, 2008

Do Not Publish