Emmett James WYNN, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–92–00046–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 28, 1993.

Discretionary Review Granted
May 5, 1993.

**358**

David M. Eisen, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Julie Klibert, Steve Baldassano, Asst. Dist. Attys., Houston, for appellee.

Before O'CONNOR, DUGGAN and HEDGES, JJ.

## OPINION

O'CONNOR, Justice.

A jury found the appellant, Emmett James Wynn, guilty of possession with intent to deliver a controlled substance, and for enhancement purposes, they found the appellant used or exhibited a deadly weapon during the commission of the offense. The court assessed punishment at 30 years in prison and a $10,000 fine. We reform the judgment and affirm.

### Fact summary

At about 5:00 a.m., the police were notified there were two men walking through the neighborhood knocking on doors. When Officer Braunig arrived, one of the men, Manuel Shepherd, pointed down the street to a garage that was on fire. Braunig notified the fire department and called for an ambulance.

The appellant joined Officer Braunig and Shepherd. The appellant told Braunig he had been replacing the gas tank when the fire started. In front of Braunig, Shepherd accused the appellant of trying to burn down Shepherd's house. Later, Shepherd denied it was his house. About this same time, Braunig saw a woman come out of the house and leave. The officer was not able to identify her. Because the appellant's arm was burned, Braunig suggested he go to the hospital, but he refused. Once the ambulance arrived, the appellant let the medics treat him.

While the fire was being extinguished, one of the officers volunteered to get some clothes for the appellant, who was in his shorts. The officer was directed to the middle bedroom, where he found some slacks for the appellant.

After extinguishing the fire, the officers pulled the charred car out of the garage. The gas tank fell off the car, and the officers noticed it had two separate compartments. The officer testified the separate compartment is used to hide drugs. The officer placed the appellant and Shepherd in investigative custody. After the appellant signed a consent form allowing the police to search the house, the officers placed the two men in the patrol car and searched the house.

In the kitchen, the police found scales, a plastic bag containing cocaine, epoxy putty, metal press frames and trays, hydraulic jacks, gloves, and glass beakers. In one of

the bedrooms, the police found two pounds of cocaine, $72,000 in a briefcase, a firearm silencer, a currency counting machine, currency binders, and $34,000 under a chest. In a separate bedroom, the officers found two handguns under a blanket. In the middle bedroom, identified as the appellant's, the officer's recovered the appellant's wallet; they did not find any drugs or guns.

The critical parts of the indictment are reproduced in full here, as both points of error challenge the indictment and the evidence that supports it.

State of Texas

vs.

Emmett James Wynn aka

James Jackson

In the name and by authority of the State of Texas:

The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas Emmett James aka James Jackson, hereafter styled the Defendant, heretofore on or about April 20, 1991, did then and there unlawfully, intentionally and knowingly possess with intent to deliver, a controlled substance, namely, cocaine, weighing at least 400 grams by aggregate weight, including any adulterants and dilutants.

It is further presented that at the time the Defendant committed the felony offense alleged above on or about April 20, 1991, he used and exhibited a deadly weapon, namely a Firearm, during the commission of and during the immediate flight therefrom.

Against the peace and dignity of the State

/s/ Foreman of the grand jury.

**1. Instructed verdict**

In point of error one, the appellant argues the trial court committed reversible error in refusing to grant the appellant's motion for an instructed verdict challenging the second paragraph in the indictment, regarding using or exhibiting a deadly weapon during the commission of the offense.

A challenge to the trial judge's ruling on a motion for an instructed verdict is a challenge to the sufficiency of the evidence to support the conviction. *Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim.App.1990). In reviewing the sufficiency of the evidence, we consider all the evidence, that introduced by both State and defense, in the light most favorable to the verdict. *Id.* If the evidence is sufficient to sustain the conviction, then the trial judge did not err in overruling the appellant's motion. *Id.* If the evidence is insufficient to sustain the conviction, we are required to reverse the conviction and reform the judgment to reflect acquittal. *Edison v. State*, 630 S.W.2d 696, 697 (Tex.App.— Houston [1st Dist.] 1981, no pet.).

When reviewing the sufficiency of the evidence on appeal, we view the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154, 157 (Tex.Crim.App.1991); *McCafferty v. State*, 748 S.W.2d 489, 491 (Tex.App.—Houston [1st Dist.] 1988, no pet.). The sufficiency of the evidence must be measured against the jury charge. *Geesa*, 820 S.W.2d at 159. If the evidence supports an inference other than the guilt of the appellant, a finding of guilt beyond a reasonable doubt is not a rational finding. *Belyeu v. State*, 791 S.W.2d 66, 68 (Tex.Crim.App.1989). Proof amounting only to a strong suspicion or mere probability is insufficient. *Skelton v. State*, 795 S.W.2d 162, 167 (Tex.Crim.App. 1989) cert. denied 498 U.S. 878, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990); *McCafferty*, 748 S.W.2d at 491. The burden of proof in a criminal case is on the State to prove every element of the offense beyond a reasonable doubt, whether the State is relying on circumstantial or direct evidence. *McCafferty*, 748 S.W.2d at 491.

In circumstantial evidence cases tried before *Geesa*, in which the jury was not instructed with a full definition of rea-

sonable doubt,[1] to affirm, we apply the pre-*Geesa* standard of review. *Geesa,* 820 S.W.2d at 165. This case was tried before *Geesa,* and the full definition of reasonable doubt, as set out in *Geesa,* was not given. Thus, to affirm, we must find every other reasonable hypothesis raised by the evidence was negated, save and except the evidence that established the guilt of the defendant. *Id.* at 158.

In *Patterson v. State,* 769 S.W.2d 938 (Tex.Crim.App.1989), the Court of Criminal Appeals explained the difference between "use" and "exhibit" in TEX.CODE CRIM.P.ANN. art. 42.12, § 3g (Vernon Supp. 1993). The court determined:

> "used ... during the commission of a felony offense" refers certainly to the wielding of a firearm with effect, but it extends as well to *any* employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony.... [T]o "exhibit" a deadly weapon it need only be consciously displayed during the commission of the required felony offense.

*Patterson,* 769 S.W.2d at 941. The court went on to observe that it was possible to *use* a deadly weapon without exhibiting it, but it is doubtful a person could *exhibit* a deadly weapon without using it. *Id.* Thus, because the guns were hidden under a blanket, if the guns were employed in the commission of this crime, the appellant was *using* it, not exhibiting it.

In *Patterson,* the defendant was convicted of illegally possessing less than 28 grams of methamphetamine and using or exhibiting a deadly weapon during the commission of the offense. *Id.* at 939. When the police kicked in the door, Patterson was sitting on the far left end of the sofa. Next to Patterson was an end table, on which was a bag with 1.10 grams of methamphetamine, a wallet with $905, and a "gun boot." When the police entered, Patterson raised his hands and told the officers he had a gun between his leg and the end of the sofa. *Id.* On appeal, Patterson argued the gun was to protect his money, not the drugs. The Court of Criminal Appeals held a rational trier of fact could find the appellant used the firearm during the commission of the felony offense of possessing the contraband, in a sense the firearm protected and facilitated the appellant's care, custody, and management of the contraband. *Id.* at 942. In *Patterson,* the defendant had both the gun and the drugs within his reach at the time he was arrested.

The *Patterson* court considered *United States v. La Guardia,* 774 F.2d 317 (8th Cir.1985), in which the defendants were convicted of possession of cocaine with the intent to distribute, and one was convicted of using a firearm during the commission of a felony. In *La Guardia,* when the officers attempted to execute a search warrant on the defendants' house, one of the defendants attempted to slam the door shut. After the officers forced their way in, they found a gun in a purse in a hall closet that belonged to one of the defendants, and they found a gun in one of the defendants' automobiles. The circuit court interpreted 18 U.S.C. § 924(c)(1) (1979)[2] to mean "the possession of a firearm which in any manner facilitates the execution of the felony." *Id.* at 321 (quoted in *Patterson,* 769 S.W.2d at 941). Both defendants were convicted of aiding and abetting each other in the possession of cocaine with the intent to distribute and using a firearm to commit a felony. *Id.* at 319.

Here, the appellant, who was in the patrol car when the officers searched the house, was not within reach of the drugs and the gun as in *McCafferty,* and he was not in the house with the drugs and the guns as in *Patterson.* The officers did not find the guns or the drugs in the middle bedroom, the only room identified with the

---

1. *Geesa,* 820 S.W.2d at 162.

2. 18 U.S.C. § 924(c)(1) provides:
   Whoever—
   (1) uses a firearm to commit any felony for which he may be prosecuted in a court of the United States ... shall, in addition to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment for not less than one year nor more than ten years.

appellant. The officers did not find the appellant's fingerprints on the guns or in the bedroom where the guns were found. The clothing found in the closet of that bedroom was not linked to the appellant. The appellant was only one among at least two other persons who had access to the house. The State did not determine who was the registered owner of the guns. Officer Brown agreed there was no "evidence whatsoever that would show that [the appellant] was in that bedroom [with the guns] at any time."

█ The jury was charged on the law of parties. If the defendant is guilty as a party only, he must have personally used a deadly weapon in order to support a deadly weapon finding. *Reyes v. State*, 741 S.W.2d 414, 432 (Tex.Crim.App.1987); *Mejia v. State*, 807 S.W.2d 354, 355 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd).

█ In *Flores v. State*, 690 S.W.2d 281, 283 (Tex.Crim.App.1985), the Court of Criminal Appeals said:

> The trial court found, after the conclusion of the punishment hearing, that "a deadly weapon, to-wit: a handgun was used and exhibited" during the commission of the offense and entered that finding in the judgment.... However, since the law of parties is involved, the affirmative finding must show that *the appellant* used or exhibited the deadly weapon.... Since it is impossible for this Court to determine which theory the jury used to conclude that the appellant was guilty, individually or as a party, and the trial court did not specify that this appellant used or exhibited a deadly weapon, the decision of the Court of Appeals [reforming the judgment] is affirmed.

We sustain point of error one.

█ This Court has the power to reform and correct the judgment as the law and the nature of the case require. *Barecky v. State*, 639 S.W.2d 943, 945 (Tex. Crim.App. [Panel Op.] 1982); TEX.R.APP.P. 80(b)(2), (c). Because point of error one challenges the sufficiency of the evidence to support the conviction, in sustaining it, we reform the judgment to reflect acquittal on the enhancement issue of using or exhibiting a deadly weapon during the commission of the offense. *See Reyes*, 741 S.W.2d at 433; *Edison*, 630 S.W.2d at 697.

## 2. Amended indictment

█ In point of error two, the appellant argues the trial court committed reversible error in permitting the State to amend the indictment after trial had commenced and over the appellant's objection.

The indictment in this case bears the correct name of the appellant in the caption of the case, "Emmett James Wynn a/k/a James Jackson." In the body of the indictment, the appellant is referred to as "Emmett James a/k/a James Jackson," omitting the appellant's last name of "Wynn."

After the jury was impaneled, the appellant was arraigned. The prosecutor read the indictment against the appellant as "Emmett James a/k/a James Jackson," to which the appellant pled not guilty. Immediately after the appellant pled not guilty, the State asked the trial court to ask the appellant if the name in the indictment was his correct name. When the court asked the appellant his name, the appellant replied "Emmett James Wynn." The State, citing TEX.CODE CRIM.P.ANN. art. 26.08 (Vernon 1989), asked the court to note the name change in the minutes of the court and correct the indictment by inserting the name as suggested by the appellant. The appellant objected to any change or modification of the indictment, because the jury had been selected, and the trial was about to begin.

The appellant relies on *Brown v. State*, 828 S.W.2d 762 (Tex.Crim.App.1991), for his argument that the trial court could not change his name in the indictment over his objection after the jury was sworn. In *Brown*, the State requested the court strike the first name of the complainant after the State had rested. *Brown*, 828 S.W.2d at 763. The Court of Criminal Appeals held the striking of the complainant's first name after trial had started violated article 28.10(b). The appellant argues *Brown* holds an amendment of an indict-

ment that violates Article 28.10(b)[3] is automatically reversible error and is not subject to a rule 81(b)(2)[4] harm analysis. *Brown,* 828 S.W.2d at 764. We agree with the appellant's interpretation of *Brown;* we disagree that it applies here.

The Court of Criminal Appeals expressly stated in *Kelley v. State,* 823 S.W.2d 300, 302 (Tex.Crim.App.1992), the name change of a defendant does not constitute an amendment under article 28.10. In *Kelley,* after the jury was impaneled, and the defendant had been arraigned as Frank Kelley, but before he entered his plea, the trial court asked the defendant if he was "Frank Kelley." The court said it had been brought to its attention that defendant's name was "Frank Ronnie Kelly." To that, the defendant responded his name was Frank Kelley, III. The trial court changed his name in the indictment to reflect his correct name, over the defendant's objection that it was too late to amend the indictment. *Kelley,* 823 S.W.2d at 301. The Court of Criminal Appeals held the act of changing the name of the defendant is a ministerial act. *Kelley,* 823 S.W.2d at 302.

■■■ We recognize the Court of Criminal Appeals has held to the contrary in other cases. *See, e.g., Blackman v. State,* 156 Tex.Crim. 288, 242 S.W.2d 441, 441 (1951) (name in the complaint could not be changed from Blackburn to Blackman); *Givens v. State,* 155 Tex.Crim. 409, 235 S.W.2d 899, 900 (1951) (name in complaint could not be changed from Jack Ross to Jack Ross Givens); *Lazenberry v. State,* 50 Tex.Crim. 357, 97 S.W. 87, 88 (1906) (name in the complaint could not be changed from Johnson to Lazenberry). As an intermediate court, when faced with inconsistent opinions of the Court of Criminal Appeals, we rely on the most current opinion and leave it to the Court of Criminal Appeals to distinguish or explain the earlier cases.

We overrule point of error two.

We reform the judgment to delete the affirmative finding that the appellant used or exhibited a deadly weapon, and as reformed, we affirm the judgment of the trial court. *Reyes,* 741 S.W.2d at 433.

---

3. TEX.CODE CRIM.P.ANN. art. 28.10(b) (Vernon 1989) states: "A matter of form or substance in an indictment or information may also be amended after the trial on the merits commences *if the defendant does not object.*" (Emphasis added.)

4. TEX.R.APP.P. 81(b)(2) states: "If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment."