IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 1466-03 & 1480-03






LAKEITH LAWAYNE COLEMAN, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIRST COURT OF APPEALS


HARRIS COUNTY




 


 Meyers, J., delivered the unanimous opinion of the Court. Cochran, J.,
filed a concurring opinion, in which Price, Johnson, and Holcomb, JJ., joined.


O P I N I O N 



 Appellant was found guilty of possession with intent to deliver cocaine weighing
more than 4 grams and less than 200 grams, and PCP weighing at least 400 grams. The
jury found that Appellant had used a deadly weapon, a firearm, during the commission of
each offense and sentenced Appellant to 50 years imprisonment for the cocaine offense
and 60 years imprisonment for the PCP offense, and assessed a fine in the amount of
$150,000. Appellant appealed, claiming that under the facts and circumstances presented
at trial, the evidence was insufficient to support the jury's finding that he used or
exhibited a deadly weapon during the commission of each offense. The Court of Appeals
affirmed the judgment of the trial court. We granted review to determine whether the
evidence was sufficient to support the jury's affirmative deadly weapon finding. We will
affirm the decision of the Court of Appeals.

Facts

 Two officers, Fuller and Lerma, were conducting narcotics surveillance in the
3800 block of Kashmere in Houston when they saw a truck drive up and park in front of
3818 Kashmere. The officers recognized the truck as one they had seen a few days earlier
at 4908 Crane Street. Appellant got out of the truck, walked around to the front of it
while talking on a cell phone, and then got back into the truck. A car then pulled up and
stopped behind Appellant's truck. A man got out of the car, got into the passenger's seat
of Appellant's truck, and after a minute or two, got out of the truck and left. This pattern
of behavior was observed two more times. Officer Lerma testified that because of this
behavior, the officers believed that Appellant was involved in illegal activity with drugs.

 Officer Fuller contacted Officer Gratz, who was in uniform and assisting the
officers, and told him to approach and detain Appellant. Gratz handcuffed Appellant and
placed him in the back seat of the patrol car. The officers smelled the odor of PCP
emanating from Appellant's truck when the door was opened. Officer Fuller approached
Appellant and asked if there were narcotics in the truck, and Appellant said there were
not. Officer Fuller then asked Appellant to give the officers consent to search his truck
and his residence. After Appellant's handcuffs were removed, Appellant read and signed
a consent-to-search form.

 The officers searched Appellant's truck, but found no narcotics. They then asked
Appellant where he lived, and Appellant gave them the wrong address. (1) Upon
discovering that the truck Appellant was driving was registered at 4908 Crane, the
officers asked him again and he gave them the Crane address. With Appellant's consent,
they then drove him to the residence, where Officers Fuller and Gratz opened the house
door with a key from Appellant's key chain. Appellant remained in the patrol car while
the officers searched the house.

 The house had two bedrooms: The front room contained a bed, a dresser, a
television, and a safe, while the back room contained an entertainment center, a weight
set, and some clothes and shoes piled on the floor. Inside the back room, Officer Fuller
found a number of empty vials, which he testified were typically used "to sell PCP in and
they also had a little dropper which they use to put the PCP in the vials." Behind the
entertainment center, he also discovered a juice bottle containing PCP. Appellant had
told Officer Lerma that there might be some crack cocaine in the kitchen. When Lerma
searched the kitchen, he discovered a small beaker-type glass containing crack cocaine as
Appellant had said. In the dining room, more empty vials were found, as well as a large
amount of powdered cocaine on a chair under the dining room table. In the front
bedroom, the officers found a closed safe containing two large bottles of PCP, large
amounts of money, jewelry, and Appellant's college student identification card. Next to
the safe, on a table beside the bed, the officers discovered two pieces of unopened mail
addressed to Appellant at 4908 Crane. They also recovered a 9-millimeter pistol and a
.22 rifle "from the front bedroom, with the bed." (2) An assault rifle was also recovered, but
the record does not indicate where in the house it was found. The utilities at the house 
were registered in Appellant's name, and Appellant told an interviewer at the jail that he
lived alone in the house. 

Procedural history

 At trial, during its deliberation at the guilt/innocence stage, the jury sent out a note
regarding the deadly-weapon special issue. The note asked: "Please define 'commission
of the offense.' Does this mean during the defendant's detainment or in relation to the
offense? Is this a specific point in time?" The court answered: "In these cases
'commission of the offense' means during the time the defendant possessed a controlled
substance with intent to deliver it." (3) The jury found Appellant guilty of both the cocaine
and the PCP offense, and also found that Appellant used a deadly weapon, a firearm,
during the commission of each offense.

 On appeal, Appellant argued that the evidence was insufficient to support an
affirmative finding on the deadly-weapon issue. Coleman v. State, 113 S.W.3d 496, 502
(Tex. App.- Houston [1st Dist.] 2003). The Court of Appeals, citing Patterson v. State,
769 S.W.2d 938 (Tex. Crim. App. 1989), determined that the following factors could
enable a rational jury to find that Appellant used a firearm to facilitate his possession of
the narcotics: 1) the guns were found "in close proximity to the narcotics," in the same
bedroom as the safe which contained the large bottle of PCP, money, jewelry, and
Appellant's college student identification card; 2) mail found in the front bedroom was
addressed to Appellant; and 3) the State presented evidence that Appellant lived in the
house alone. Coleman, 113 S.W.3d. at 502-03. Thus, the court held that the evidence
was sufficient to support a finding that Appellant used or exhibited a deadly weapon
during the commission of the offense. Id. at 503. 

 In this appeal, Appellant maintains that the evidence was insufficient to establish
that he used or exhibited a deadly weapon during the commission of each offense
because: 1) he was handcuffed and sitting in the back of a patrol car at the time of the
search and thus had no access to the guns; 2) there was no evidence that his fingerprints
were on the guns or that the guns were registered in his name; 3) no evidence established
the guns as deadly weapons, and because there was no one present at the time the
weapons were found, the danger was only hypothetical; (4) 4) the weapons were not located
in close proximity to the drugs; 5) no drugs were discovered in the front bedroom or any
area shown to be under Appellant's exclusive control; (5) and 6) there was no evidence of
Appellant's actual physical possession or control of the weapons. We will discuss the
validity of these more thoroughly below.

Standard of review

 Because Appellant is challenging the legal sufficiency of the evidence, this Court
must view the evidence in the light most favorable to the verdict. Gale v. State, 998
S.W.2d 221, 223 (Tex. Crim. App. 1999). In doing so, we must determine whether a
rational trier of fact could have found beyond a reasonable doubt that Appellant used the
guns to facilitate possession and delivery of the narcotics. Id.

Meaning of "exhibit" versus "use"

 The deadly weapon finding is important to Appellant in that it affects his eligibility
for parole. Section 508.145(d) of the Texas Government Code states that "an inmate
serving a sentence . . . for an offense for which the judgment contains an affirmative
finding under Section 3g(a)(2) of [Article 42.12, Code of Criminal Procedure]" must
serve a longer period, without consideration of good conduct time, before he may be
released on parole. Tex. Gov't Code Ann. sec. 508.145(d) (Vernon 2004). Article
42.12 section 3g(a)(2) applies "when it is shown that a deadly weapon as defined in
Section 1.07, Penal Code, was used or exhibited during the commission of a felony
offense . . . ." Tex. Code Crim. Proc. Ann. art. 42.12, sec. 3g(a)(2) (Vernon 2004)
(emphasis added). It is this "used or exhibited" language in article 42.12, section 3g(a)(2)
that is under discussion today.

 Patterson, cited by both parties, is the key Texas case discussing the difference
between the meaning of "exhibit" and the meaning of "use" in article 42.12 of the Texas
Code of Criminal Procedure. 769 S.W.2d at 941. The Court explained that while the
word "use" typically means that a deadly weapon must be "utilized, employed, or applied
in order to achieve its intended result 'the commission of a felony offense or during
immediate flight therefrom,'" that "use" could mean "any employment of a deadly
weapon, even simple possession, if such possession facilitates the associated felony." 
769 S.W.2d at 941. The word "exhibit," however, requires a weapon to be "consciously
shown, displayed, or presented to be viewed." Id. Thus, as the Patterson Court
explained, one can "use" a weapon without exhibiting it, but not vice versa. Id. Neither
side disputes that the weapons at issue in this case were not "exhibited" within the
meaning of the article, and we will therefore discuss only whether a rational jury could
have found that the weapons were "used" during the commission of each felony.

 In Patterson, the defendant was convicted of possession of methamphetamine and
using or exhibiting a deadly weapon during the offense. Id. at 939. The police had
kicked in the door to the house, and the defendant had been sitting at the end of a sofa. 
Id. Lying next to the defendant on an end table were a bag with methamphetamine inside,
a wallet containing over nine hundred dollars, and a "gun boot." Id. Upon the police
entering, the defendant raised his hands and told the officers he had a gun between his
legs, and that there was another gun at the end of the sofa. Id. On appeal, the defendant
argued that he possessed the gun to protect the money, not the narcotics. Id. at 940. This
Court concluded that a rational trier of fact could have determined that the defendant had
used the firearm during the commission of the offense because the jury could have
determined that the firearm protected and facilitated the defendant's care, custody, and
management of the contraband. Id. at 942.

 The Court of Appeals also discussed another case, Wynn v. State, 847 S.W.2d 357
(Tex. App.- Houston [1st Dist.] 1993), aff'd on other grounds, 864 S.W.2d 539 (Tex.
Crim. App. 1993). In Wynn, the police had been called about two men walking around
the neighborhood knocking on doors. When officers arrived, one of the men, Shepherd,
pointed down the street to a garage that was on fire. Id. The officer called the fire
department and requested an ambulance. The defendant told the officers that he was
replacing a gas tank in the car in the garage when a fire started. Shepherd confronted the
defendant in front of Officer Braunig, accusing the defendant of trying to burn down his
house. Id. Later, Shepherd denied it was his house. When the fire was out and the
officers were pulling the car out of the garage, the gas tank fell off the car and the officers
noted that the gas tank had two separate compartments, much like those often used to hide
drugs. Id. The defendant signed a consent form permitting the police to search the house,
and the officers placed the defendant and Shepherd in a patrol car during the search. 

 In the kitchen, the officers found scales, a plastic bag with cocaine inside it, and
other drug paraphernalia. They also found two pounds of cocaine, $34,000 under a chest,
a briefcase containing over $70,000, a firearm silencer, and other such items in one of the
bedrooms. Id. at 359. In another bedroom, they found two handguns hidden beneath a
blanket. They found the defendant's wallet in his bedroom (the middle bedroom), but no
guns or narcotics were found in that room. Id. The jury found the defendant guilty of
possession with intent to deliver a controlled substance, and also found that he had used
or exhibited a deadly weapon during the commission of the offense. Id. at 358. In
reversing the trial court, the Court of Appeals in Wynn considered the following factors
persuasive: 1) the defendant was in the patrol car while the police searched the house and
"he was not in the house with the drugs and the guns as in Patterson;" 2) neither the guns
nor the drugs were found in the middle bedroom, which was the only bedroom linked
specifically to the defendant; 3) the defendant's fingerprints were not found on the guns
or in the bedroom where the guns were found; 4) clothing found in the bedroom where
the gun was found did not belong to the defendant; and 5) at least two other people had
access to the house. Id. at 360-61.

 Appellant interprets Wynn to mean that, "where no individual is observed in actual
physical control over the weapon, and where the weapon is found a significant distance
from the controlled substance, then the evidence is not sufficient to support an affirmative
finding of use or exhibition of a deadly weapon during the commission of an alleged
narcotics offense." We disagree with such a sweeping statement. First, we believe a
defendant's proximity to the guns at the time of the search is not dispositive. Second, in
Wynn, the guns and narcotics were found in a room containing clothes that did not belong
to the defendant, and no narcotics or guns were found in the only bedroom linked to
Wynn. Additionally, evidence was presented at the Wynn trial that at least two other
people had access to the house. Id. at 361. Here, however, drugs and weapons were
found in the only bedroom with a bed, mail found in that bedroom was addressed to
Appellant, he told an interviewer that he lived in the house alone, and the utilities were
registered in his name. Furthermore, although the trial court in Wynn found that "a
handgun was used and exhibited," the Court of Appeals reformed the judgment because
the jury was charged on the defendant only as a party, and in such a case, at that time, (6)
there had to be evidence that the defendant "personally used a deadly weapon" in order to
support a deadly weapon finding." (7)
 Id. at 361 (emphasis added), citing Reyes v. State,
714 S.W.2d 414, 432 (Tex. Crim. App. 1987). Appellant was not charged as a party. For
the many reasons just discussed, we do not find Wynn to be on point in our decision-making process today.

 Another case, Gale, 998 S.W.2d 221, involved an affirmative deadly-weapon
finding for a defendant who was found guilty of possession of marijuana. In Gale,
undercover officers conducted a "knock-and-talk" and spoke with the defendant and his
wife at their home. Id. at 223. The defendant and his wife showed the officers to their
closet, in which the officers found a mini-rifle and a trash bag containing 20 pounds of
marijuana separated into smaller bags. Id. In the same closet, but not contained in the
trash bag, were two other rifles, a handgun, bullets, and a box containing $4500 in cash. 
Id. In determining that a rational jury could find that the defendant had used the weapons
to facilitate possession of marijuana, the Court noted that the case was not one in which
"a person's weapons are found in a gun cabinet or closet completely separate from the
criminal enterprise; here, all the weapons were virtually inches away from the contraband
and its alleged proceeds." Id. at 226.

 In Appellant's case, the drugs were found all over the house. And, as already
noted, two guns were found in a room inside a safe containing two large bottles of PCP
and large amounts of cash. Although Appellant was handcuffed rather than present in the
house as the defendant was in Gale, we have already stated that we do not find the
defendant's presence to be necessary. (8) In Gale, the Court stressed the proximity of the
weapons to the drugs, not the proximity of the guns to the defendant. Id. at 226. The real
question is whether the weapons are found to have facilitated Appellant's possession and
intended distribution of the drugs. In this case, a rational jury could have found that
Appellant "used" the weapons in order to facilitate his possession and distribution of the
narcotics.

 In Sanchez v. State, 906 S.W.2d 176 (Tex. App.- Ft. Worth 1995, no writ), the
defendant was convicted of aggravated possession with intent to deliver cocaine, and the
jury made an affirmative deadly-weapon finding. The officers discovered weapons next
to cocaine in the defendant's bedroom closet, and there were other weapons and a drug
ledger in the same bedroom. Id. at 181. Additionally, the defendant admitted that he
owned the guns, his mother and sisters testified that they knew nothing of the drugs or
weapons, and police testified that guns are often used by drug dealers to protect
themselves. Id. Though the defendant was not present during the officers' search of his
house, the Court of Appeals stated that "the cumulative effect of factors enumerated
above is sufficient to warrant a rational trier of fact to conclude that Sanchez 'used' the
firearms to facilitate his care, custody, and management of the contraband." Id. 
Likewise, the "cumulative effect" of the factors discussed here in Appellant's case could
have allowed a rational jury to determine that he used the weapons to protect the narcotics
and the proceeds therefrom. As the trial judge in Appellant's case instructed the jury,
"during the commission of the offense" in a drug possession case means just that: while
in possession of drugs with intent to deliver them, the defendant is committing the
offense. It is irrelevant that Appellant was not in the residence at the time the officers
discovered the weapons.Conclusion

 Viewing the facts in the light most favorable to the verdict below, we hold the
evidence sufficient to support an affirmative finding that Appellant used a deadly weapon
during the commission of each offense. The jurors were free to believe or disbelieve portions
of the testimony given by the State and by the defense, and the jury could have reasonably
believed that the guns protected or facilitated Appellant's possession of the drugs with intent
to deliver. We therefore affirm the Court of Appeals.


 Meyers, J.

Delivered: September 29, 2004

Publish

1. There is discussion in the record about whether Appellant gave the wrong address or
simply mis-spoke. 
2. The record does not indicate where the guns were found, i.e., whether they were found
under the bed, on the bed, etc.
3. Neither the accuracy of the jury charge nor the judge's response to the jury questions is
disputed.
4. Appellant cites to Cates v. State, 102 S.W.3d 735 (Tex. Crim. App. 2003), in support of
this argument. However, the issue in Cates was whether a car driven by Cates was used as a
deadly weapon, because a car is not a deadly weapon per se. Section 1.07(a)(17) of the Texas
Penal Code specifically defines firearms as deadly weapons. Tex. Penal Code Ann.
§1.07(a)(17) (Vernon 2003). Thus, Cates is inapplicable to Appellant's case, as is the issue of
whether the weapons found in the residence were deadly weapons.
5. We note that some of Appellant's arguments are not entirely accurate statements of the
record. For example, the record indicates that, as to "4)," weapons were discovered in the same
bedroom as two bottles of PCP, and as to "5)," PCP was indeed found in the safe in the front
bedroom.
6. At the time of the Wynn trial, Article 42.12, § 3g(a)(2), stated: 
(a) The provisions of Sections 3 and 3c of this Article do not apply:
* * *
(2) to a defendant when it is shown that the defendant used or exhibited a deadly weapon as
defined in Section 1.07(a)(11), Penal Code, during the commission of a felony offense or during
immediate flight therefrom. . . .


The statute was amended in 1991 to include the phrase, "or was a party to the offense and knew
that a deadly weapon would be used or exhibited." 
7. The court stated that "since the law of the parties is involved, the affirmative finding
must show that the appellant used or exhibited the deadly weapon." Id. at 361.

8. Officer Fuller testified that, for safety purposes and to preserve evidence, it is police
policy to place a detainee in the patrol car during the search of a residence. It does not make
sense to say that because the officers handcuffed Appellant and put him in the car during the
search, that the Appellant is therefore immune from a deadly-weapon finding.