NO. 07-08-0071-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 17, 2008
______________________________

KELLY JAMES STINSON, 

                                                                                                 Appellant

v.

IMOGENE LESLEY, ET AL., 

                                                                                                 Appellees
_________________________________

FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;

NO. 95881-A; HON. HAL MINER, PRESIDING
_______________________________

Order
_______________________________
 

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
          Before us is the question of whether Kelly James Stinson (Stinson) is entitled to a
free appellate record. He appealed the trial court’s dismissal of his claims for fraud,
intentional infliction of emotional distress, and conspiracy against Imogene Lesley, Joe
Riley, and Herbert Everitt. As garnered from Stinson’s pleadings, those claims purportedly
arose from the actions of Lesley, Riley, and Everitt in relation to the revocation of his
parole. The trial court determined that Stinson’s appellate claims were frivolous. We
agree and deny him a free appellate record.
          Statute dictates that an indigent prisoner appealing the dismissal of his civil suit is
entitled to a free appellate record unless the trial court determines that his appeal is
frivolous. Tex. Civ. Prac. & Rem. Code Ann. §13.003(a)(2) (Vernon 2002). Here, the trial
court so determined, but Stinson has attacked that finding. He believes it to be wrong
because 1) his causes of action had arguable basis in law, 2) the present lawsuit involved
different operative facts from previous lawsuits involving the same defendants, 3) the trial
court could not dismiss an inmate’s lawsuit for failing to file a declaration of previous filings
if one is filed prior to dismissal, 4) the trial court could not dismiss an inmate’s lawsuit for
failing to exhaust administrative remedies because Stinson did not file a claim against a
department or an employee of the department, 5) Lesley was not entitled to quasi judicial
immunity, and 6) the trial court could not dismiss his claims against Herb Everett (Stinson’s
lawyer) with prejudice. Because we find Stinson’s causes of action have no arguable basis
in law, we need not address his remaining issues. We so conclude for the following
reasons.
          First, the pleadings describe Lesley and Riley as a hearing officer and parole officer,
respectively, acting within the course and scope of their duty. Furthermore, they
purportedly conspired to have his parole improperly revoked. Being part of the executive
branch of the State government when exercising those roles, they are granted absolute
immunity from suits involving matters related to the granting and revocation of parole. 
Johnson v. Kegans, 870 F.2d 992, 997 (5th Cir. 1989); Moore v. Stiles, No 3:02-CV-173-P,
2004 U.S. Dist. Lexis 29672 (N.D. Tex. February 27, 2004). Thus, Stinson could not
recover against them for fraud, intentional infliction of emotional distress, or conspiracy.
          As for Everitt, he purportedly misrepresented to Stinson that a “Charles Long had
filed a complaint with the Division accusing plaintiff of violating rule four of his [parole]
agreement.” This purported falsehood entitled him to sue his attorney for fraud and
intentional infliction of emotional distress. At the time, Everitt was representing Stinson in
his effort to defeat the State’s attempt to revoke his parole. Furthermore, revocation
occurred when the reviewing body concluded that Stinson had traveled to Florida without
permission. That particular ground was referred to as the “rule four” violation in Stinson’s
pleading. Given this context, we are unable to see how any supposed misstatement by
Everitt about the identity of the person who initiated the “rule four” allegation injured
Stinson when the substance of the allegation itself was found to be true. Simply put, if a
baseball announcer calls out the wrong name of a batter who subsequently hits a home
run, a home run was still hit irrespective of the batter’s name. The opposing team suffers
not from the announcer’s mistake but from the fact that the ball was hit over the fence. No
less is true here. Irrespective of Everitt’s conduct or representations, Stinson remains
imprisoned because of what the parole panel found he (Stinson) did. And, until that finding
is somehow overturned, any claim Stinson may have against Everitt for his alleged
involvement in securing the determination remains premature. Nelson v. Gioffredi &
Associates, No. 07-01-0284-CV, 2002 WL 123347 (Tex. App.–Amarillo January 29, 2002,
pet. denied) (not designated for publication) (holding that before an accused can sue his
attorney for misconduct he must first secure a reversal of his conviction); accord, Douglas
v. Delp, 987 S.W.2d 879, 884 n.1 (Tex. 1999), quoting, Peeler v. Hughes & Luce, 909
S.W.2d 494 (Tex. 1995) (plurality opinion) (stating that the plaintiff must first be exonerated
of the criminal conviction before suing his legal counsel).


 
          Accordingly, we overrule Stinson’s objections to the trial court’s determination that
the appeal would be frivolous. Thus, he is not entitled to a free record. Furthermore, we
order him to pay for the record or make arrangements for its payment suitable to the
District Court Clerk of Potter County and inform us in writing that such has occurred by
October 29, 2008. Should Stinson fail to comply with this order, then the cause will be
dismissed per Texas Rule of Appellate Procedure 37.3(b).
  
                                                                           Brian Quinn
                                                                          Chief Justice

 



>          By appellant’s six issues, he contends the evidence presented did not show that the
gun was his, that it was in close proximity to drugs, that he was the sole occupant of the
house, or that other evidence directly linked him to the gun. 
Evidentiary Sufficiency Supporting Deadly Weapon Finding 
          To review evidence for legal sufficiency, we must view the evidence in the light most
favorable to the verdict and determine if a rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. See Narvaiz v. State, 840 S.W.2d 415,
423 (Tex.Crim.App.1992), cert. denied, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791
(1993) citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560
(1979).
          A factual sufficiency review requires us to view all of the evidence in a neutral light
and ask whether the jury was rationally justified in finding guilt (or an affirmative finding)
beyond a reasonable doubt. Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). 
We apply the same analysis to evidence supporting an affirmative deadly weapon finding. 
See Mendez v. State, No. 01-07-00680-CR, 2008 WL 5263415, *2 (Tex.App.–Houston [1st
Dist.] Dec. 18, 2008, no pet.) (mem. op., not designated for publication) (conducting
sufficiency review of evidence supporting deadly weapon finding). Evidence is factually
insufficient when the evidence supporting the conviction is so weak that the verdict seems
clearly wrong and manifestly unjust, or the evidence supporting the conviction is outweighed
by the great weight and preponderance of the contrary evidence so as to render the verdict
clearly wrong and manifestly unjust. Grotti v. State, 273 S.W.3d 273, 283 (Tex.Crim.App.
2008); Roberts v. State, 220 S.W.3d 521, 524 (Tex.Crim.App. 2007); Sanchez v. State, 243
S.W.3d 57, 72 (Tex.App.–Houston [1st Dist.] 2007, pet. ref’d). Our evaluation should not
intrude upon the fact finder's role as the sole judge of the weight and credibility given to any
witness's testimony. See Fuentes v. State, 991 S.W.2d 267, 271 (Tex.Crim.App.1999). The
weight to be given contradictory testimonial evidence is within the sole province of the
fact-finder. See Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); Cain v. State, 958
S.W.2d 404, 408-09 (Tex.Crim.App. 1997). In conducting a factual-sufficiency review, we
must discuss the evidence that, according to the appellant, most undermines the trial court's
findings. See Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).
          An affirmative deadly weapon finding may be made when the State establishes, inter
alia, (1) that a deadly weapon was used or exhibited during the commission of a felony
offense or (2) that the defendant was a party to the offense and knew that a deadly weapon
would be used or exhibited.


 Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (Vernon Supp.
2008). Any employment of a firearm or other deadly weapon, even its simple possession, to
facilitate the commission of another offense constitutes a "use" of the weapon. Patterson v.
State, 769 S.W.2d 938, 941 (Tex.Crim.App.1989).
          In Patterson, officers executing a search warrant found the defendant sitting on a
couch near a table on which methamphetamine was located. Id. at 939. A pistol was on the
couch beside the defendant's leg. Id. The court held that the evidence supported a finding
that the defendant used the pistol to facilitate his possession of the methamphetamine. Id.
at 942. In Gale v. State, twenty pounds of marihuana, several unloaded firearms, and
ammunition for those firearms were found in the bedroom closet of the defendant's house.
Gale v. State, 998 S.W.2d 221, 223 (Tex.Crim.App.1999). The court held that the evidence
supported a finding that the defendant used the weapons to facilitate his possession of the
marijuana. Id. at 226. In Coleman v. State, drugs and drug paraphernalia were found
throughout the defendant's residence. Coleman v. State, 145 S.W.3d 649, 650-51
(Tex.Crim.App. 2004). In a bedroom, officers found a pistol, a rifle, and a safe containing
bottles of PCP and a large amount of money. Id. at 651. The court held that a rational trier
of fact could find that the defendant used the firearms to facilitate his possession and
distribution of the drugs. Id. at 655. In Wynn v. State, the court reversed a deadly weapon
finding because the defendant was charged as a party to the offense and the evidence
showed he was not in the house with the drugs and guns, he was not the only occupant of
the house, the owner of the guns was not determined, and no guns or drugs were found in
the only room connected with the defendant. Wynn v. State, 847 S.W.2d 357, 360-61
(Tex.App.–Houston [1st Dist.] 1993), aff’d, 864 S.W.2d 539 (Tex.Crim.App. 1993).
          Courts have recognized that it is common for narcotics dealers to possess firearms for
the purpose of protecting themselves because they possess large amounts of drugs and
cash. See, e.g., Moreno v. State, 978 S.W.2d 285, 289 (Tex.App.–Fort Worth 1998, no pet.).
See also Wilson v. State, 132 S.W.3d 695, 698 (Tex.App.–Amarillo 2004, pet. ref’d)
(recognizing it is “rather settled” that weapons are associated with the drug trade). The Court
of Criminal Appeals has noted that a firearm is “used” during the commission of the felony
offense of possessing contraband in the sense that the firearm protects and facilitates the
care, custody and management of the contraband. Gale, 998 S.W.2d at 224. See also
Dimas v. State, 987 S.W.2d 152, 154-55 (Tex.App.–Fort Worth 1999, pet. ref’d) (narcotics
supervisor testified it was customary for drug dealers to have firearms and “use” them to
protect themselves, their drugs, and their money). 
          Appellant argues his case is distinguishable from Patterson, and is more similar to
Wynn. He points to evidence showing he was not the only occupant of the house, and that
his girlfriend knew the location of the $8000 hidden in the bathroom. But the evidence shows
appellant was the primary occupant of the small house. Among the items police found there
was a rent receipt in appellant’s name. Appellant testified his relationship with his girlfriend
was of long standing, and testified she, like appellant, sold marijuana. Neither her presence
in the house nor her knowledge of the hidden cash weakens the incriminating inferences
properly drawn from the presence of the pistol in the bedroom. See also Charles v. State, 915
S.W.2d 238, 241 (Tex.App.–Beaumont 1996, pet. ref'd) (also distinguishing Wynn). 
          Appellant also points out the evidence of the locations at which the different drugs were
found in the house is not specific, and argues there is thus no evidence the pistol and the
drugs were found in close proximity. We disagree. Appellant testified the marijuana blunts
were in the dresser drawer, and other evidence also shows marijuana in the bedroom. 
Appellant also testified powder cocaine and additional marijuana were found in the refrigerator
in the kitchen. While the pistol was not in the same container as any of the drugs, it was found
very near the dresser. Further, the bedroom and the kitchen of the house were immediately
adjacent, so the pistol was within feet of the drugs located there. 
          Citing Wynn, appellant also argues there is no evidence his fingerprints were found on
the gun or in the room where it was found, others had access to the house and no evidence
shows he owned the gun. Appellant is correct the record contains no fingerprint evidence. 
But fingerprint evidence was unnecessary to establish that appellant lived in the one-bedroom
house, that the room in which the pistol was found was his bedroom, and that the backpack
containing the pistol was on the floor along the wall between the bedroom and the bathroom,
covered by a blanket. Appellant testified to those facts. Appellant denied the gun was his, but
it was in his bedroom among other items he acknowledged were his, and the trial court was
not required to accept his denial. See Cain, 958 S.W.2d at 408-09.
          By his guilty plea, appellant admitted he possessed the cocaine and methamphetamine
with the intent to distribute it. He also plead guilty to possession of marijuana and testified he
sold marijuana blunts, and “a block of weed with a whole bunch of rolled up blunts” were in the
bedroom dresser. The gun was found inside the nearby backpack in a Crown Royal bag, and
appellant acknowledged ownership of the $8000 cash found in another stashed Crown Royal
bag. Based on the standard discussed in Patterson, 769 S.W.2d at 941, the fact-finder could,
from the evidence it heard, infer that appellant was in possession of the gun found in his
bedroom and it was used to protect and facilitate his possession of drugs. See Hooper v.
State, 214 S.W.3d 9, 15 (Tex.Crim.App. 2007) (discussing permissible inferences). The nature
of the weapon supports that conclusion. See Coleman, 145 S.W.3d at 655 (Cochran, J.,
concurring). 
          Viewing all the evidence in light most favorable to the judge’s verdict, we find that the
evidence is sufficient to allow the fact finder to determine beyond a reasonable doubt that
appellant possessed the weapon and used it to facilitate possession and intended distribution
of marijuana, cocaine, and methamphetamine. Accordingly, we find the evidence legally
sufficient to support the trial court’s finding that appellant used a deadly weapon during the
commission of the three drug offenses. Appellant’s first three issues are overruled.
          On the same evidence, we find the evidence is also factually sufficient to support the
trial court’s affirmative deadly weapon findings. Appellant testified that his girlfriend and
Campbell had access to his home, and effectively argues the gun could have belonged to
either of them. As noted, he also testified Campbell was out to “get” him. Viewing the
evidence in a neutral light, we find that favoring the findings is not so weak, nor the contrary
evidence appellant emphasizes so strong, as to make the trial court’s findings clearly wrong
or manifestly unjust. Accordingly, we hold that the evidence is factually sufficient to support
the finding that appellant used a deadly weapon during the commission of the three narcotics
offenses. We overrule appellant’s fourth, fifth and sixth issues.
          Having overruled appellant’s issues, we affirm the trial court’s judgment.
 
 
 
                                                                           James T. Campbell

                                                                                    Justice

 
 
 

 
Do not publish.