NO. 07-07-0473-CR, 07-07-0474-CR, 07-07-0475-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

NOVEMBER 19, 2009
_____

CALVIN JARROD HESTER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 54,995-E, 54,996-E, 54,997-E; HONORABLE ABE LOPEZ, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant Calvin Jarrod Hester was indicted for the offenses of possession of marijuana, possession of cocaine with intent to distribute, enhanced, and possession of methamphetamine with intent to distribute, enhanced.[1] Each indictment also included a deadly weapon notice. At trial, appellant plead guilty to each of the three charged offenses and plead "true" to the enhancements alleged in the cocaine and methamphetamine

_____

[1] *See* Tex. Health & Safety Code Ann. § 481.121(b)(3), § 481.112(c), (d) (Vernon 2003).

possession indictments. Appellant elected to have the trial court decide punishment and to decide the deadly weapon issue for each offense.

The State presented evidence to show that Amarillo police officers executed a search warrant at a one-bedroom house occupied by appellant and his girlfriend. Both were present when the warrant was executed. Officers found marijuana, methamphetamine, cocaine, and drug paraphernalia in various locations in the small house, along with nearly $1,000 in cash. The house was equipped with video cameras inside. Police found a .380 semi-automatic pistol with a magazine, stored in a Crown Royal bag. The bag was in the bedroom inside a backpack located on the floor, next to a safe and a dresser. The safe contained coins and gift cards. One drawer of the dresser contained marijuana. The backpack also contained a homemade plastic marijuana bong. Appellant told the police all the drugs were his, for his personal use. Both appellant and his girlfriend were arrested.

The next day, appellant's girlfriend placed a phone call to her mother from the Potter County Jail, telling her the police missed a large amount of cash near the bathtub and asking that she retrieve the cash. Police intercepted the call and executed a second warrant, finding nearly $8,000 in cash in the bathroom of appellant's residence, concealed in a Crown Royal bag that appellant admitted was his.

Appellant testified at trial. Although he acknowledged the money and drugs were his, he said the .380 pistol was not his. He testified he did not know where it came from. He said the backpack was not his, and that it looked like "a female's bag." He said the bedroom

2

contained clothes belonging to another female friend, in addition to his girlfriend's clothes. He further stated that Manuel Campbell, referred to in the record as a "known drug dealer," stayed at the house occasionally and was there just before the police arrived, cooking crack cocaine. Appellant's testimony also suggested Campbell was angry with him and had reasons to "get" appellant.

After hearing the evidence presented, the judge found it sufficient to show appellant used the pistol to facilitate his possession and distribution of contraband and entered a deadly weapon finding for each offense.[2] On appeal, through six issues, appellant challenges the legal and factual sufficiency of the evidence to support the deadly weapon finding in each cause. We affirm.

Analysis

By appellant's six issues, he contends the evidence presented did not show that the gun was his, that it was in close proximity to drugs, that he was the sole occupant of the house, or that other evidence directly linked him to the gun.

*Evidentiary Sufficiency Supporting Deadly Weapon Finding*

To review evidence for legal sufficiency, we must view the evidence in the light most favorable to the verdict and determine if a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Narvaiz v. State*, 840 S.W.2d 415,

---

[2] The trial court sentenced appellant to two years of imprisonment for the marijuana charge, and thirty years of imprisonment for each of the cocaine and methamphetamine charges.

423 (Tex.Crim.App.1992), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993) *citing Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

A factual sufficiency review requires us to view all of the evidence in a neutral light and ask whether the jury was rationally justified in finding guilt (or an affirmative finding) beyond a reasonable doubt. *Watson v. State*, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). We apply the same analysis to evidence supporting an affirmative deadly weapon finding. *See Mendez v. State,* No. 01-07-00680-CR, 2008 WL 5263415, *2 (Tex.App.–Houston [1st Dist.] Dec. 18, 2008, no pet.) (mem. op., not designated for publication) (conducting sufficiency review of evidence supporting deadly weapon finding). Evidence is factually insufficient when the evidence supporting the conviction is so weak that the verdict seems clearly wrong and manifestly unjust, or the evidence supporting the conviction is outweighed by the great weight and preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust. *Grotti v. State,* 273 S.W.3d 273, 283 (Tex.Crim.App. 2008); *Roberts v. State*, 220 S.W.3d 521, 524 (Tex.Crim.App. 2007); *Sanchez v. State*, 243 S.W.3d 57, 72 (Tex.App.–Houston [1st Dist.] 2007, pet. ref'd).   Our evaluation should not intrude upon the fact finder's role as the sole judge of the weight and credibility given to any witness's testimony. *See Fuentes v. State*, 991 S.W.2d 267, 271 (Tex.Crim.App.1999). The weight to be given contradictory testimonial evidence is within the sole province of the fact-finder. *See Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); *Cain v. State*, 958 S.W.2d 404, 408-09 (Tex.Crim.App. 1997). In conducting a factual-sufficiency review, we

must discuss the evidence that, according to the appellant, most undermines the trial court's findings. *See Sims v. State,* 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

An affirmative deadly weapon finding may be made when the State establishes, *inter alia*, (1) that a deadly weapon was used or exhibited during the commission of a felony offense or (2) that the defendant was a party to the offense and knew that a deadly weapon would be used or exhibited.[3] Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (Vernon Supp. 2008). Any employment of a firearm or other deadly weapon, even its simple possession, to facilitate the commission of another offense constitutes a "use" of the weapon. *Patterson v. State,* 769 S.W.2d 938, 941 (Tex.Crim.App.1989).

In *Patterson*, officers executing a search warrant found the defendant sitting on a couch near a table on which methamphetamine was located. *Id.* at 939. A pistol was on the couch beside the defendant's leg. *Id.* The court held that the evidence supported a finding that the defendant used the pistol to facilitate his possession of the methamphetamine. *Id.* at 942. In *Gale v. State*, twenty pounds of marihuana, several unloaded firearms, and ammunition for those firearms were found in the bedroom closet of the defendant's house. *Gale v. State,* 998 S.W.2d 221, 223 (Tex.Crim.App.1999). The court held that the evidence supported a finding that the defendant used the weapons to facilitate his possession of the marijuana. *Id.* at 226. In *Coleman v. State*, drugs and drug paraphernalia were found throughout the defendant's residence. *Coleman v. State,* 145 S.W.3d 649, 650-51 (Tex.Crim.App. 2004). In a bedroom, officers found a pistol, a rifle, and a safe containing

---

[3] A firearm is a deadly weapon *per se.* Tex. Penal Code Ann. § 1.07(a)(17)(A) (Vernon 2003).

5

bottles of PCP and a large amount of money. *Id.* at 651. The court held that a rational trier of fact could find that the defendant used the firearms to facilitate his possession and distribution of the drugs. *Id.* at 655. In *Wynn v. State*, the court reversed a deadly weapon finding because the defendant was charged as a party to the offense and the evidence showed he was not in the house with the drugs and guns, he was not the only occupant of the house, the owner of the guns was not determined, and no guns or drugs were found in the only room connected with the defendant. *Wynn v. State,* 847 S.W.2d 357, 360-61 (Tex.App.–Houston [1st Dist.] 1993), *aff'd,* 864 S.W.2d 539 (Tex.Crim.App. 1993).

Courts have recognized that it is common for narcotics dealers to possess firearms for the purpose of protecting themselves because they possess large amounts of drugs and cash. *See, e.g., Moreno v. State*, 978 S.W.2d 285, 289 (Tex.App.–Fort Worth 1998, no pet.). *See also Wilson v. State,* 132 S.W.3d 695, 698 (Tex.App.–Amarillo 2004, pet. ref'd) (recognizing it is "rather settled" that weapons are associated with the drug trade). The Court of Criminal Appeals has noted that a firearm is "used" during the commission of the felony offense of possessing contraband in the sense that the firearm protects and facilitates the care, custody and management of the contraband. *Gale,* 998 S.W.2d at 224. *See also Dimas v. State,* 987 S.W.2d 152, 154-55 (Tex.App.–Fort Worth 1999, pet. ref'd) (narcotics supervisor testified it was customary for drug dealers to have firearms and "use" them to protect themselves, their drugs, and their money).

Appellant argues his case is distinguishable from *Patterson*, and is more similar to *Wynn*. He points to evidence showing he was not the only occupant of the house, and that

6

his girlfriend knew the location of the $8000 hidden in the bathroom. But the evidence shows appellant was the primary occupant of the small house. Among the items police found there was a rent receipt in appellant's name. Appellant testified his relationship with his girlfriend was of long standing, and testified she, like appellant, sold marijuana. Neither her presence in the house nor her knowledge of the hidden cash weakens the incriminating inferences properly drawn from the presence of the pistol in the bedroom. *See also Charles v. State*, 915 S.W.2d 238, 241 (Tex.App.–Beaumont 1996, pet. ref'd) (also distinguishing *Wynn*).

Appellant also points out the evidence of the locations at which the different drugs were found in the house is not specific, and argues there is thus no evidence the pistol and the drugs were found in close proximity. We disagree. Appellant testified the marijuana blunts were in the dresser drawer, and other evidence also shows marijuana in the bedroom. Appellant also testified powder cocaine and additional marijuana were found in the refrigerator in the kitchen. While the pistol was not in the same container as any of the drugs, it was found very near the dresser. Further, the bedroom and the kitchen of the house were immediately adjacent, so the pistol was within feet of the drugs located there.

Citing *Wynn*, appellant also argues there is no evidence his fingerprints were found on the gun or in the room where it was found, others had access to the house and no evidence shows he owned the gun. Appellant is correct the record contains no fingerprint evidence. But fingerprint evidence was unnecessary to establish that appellant lived in the one-bedroom house, that the room in which the pistol was found was his bedroom, and that the backpack containing the pistol was on the floor along the wall between the bedroom and the bathroom, covered by a blanket. Appellant testified to those facts. Appellant denied the gun was his, but

7

it was in his bedroom among other items he acknowledged were his, and the trial court was not required to accept his denial.  *See Cain,* 958 S.W.2d at 408-09.

By his guilty plea, appellant admitted he possessed the cocaine and methamphetamine with the intent to distribute it.  He also plead guilty to possession of marijuana and testified he sold marijuana blunts, and "a block of weed with a whole bunch of rolled up blunts" were in the bedroom dresser.  The gun was found inside the nearby backpack in a Crown Royal bag, and appellant acknowledged ownership of the $8000 cash found in another stashed Crown Royal bag.  Based on the standard discussed in *Patterson*, 769 S.W.2d at 941, the fact-finder could, from the evidence it heard, infer that appellant was in possession of the gun found in his bedroom and it was used to protect and facilitate his possession of drugs.  *See Hooper v. State*, 214 S.W.3d 9, 15 (Tex.Crim.App. 2007) (discussing permissible inferences).  The nature of the weapon supports that conclusion.  *See Coleman,* 145 S.W.3d at 655 (Cochran, J., concurring).

Viewing all the evidence in light most favorable to the judge's verdict, we find that the evidence is sufficient to allow the fact finder to determine beyond a reasonable doubt that appellant possessed the weapon and used it to facilitate possession and intended distribution of marijuana, cocaine, and methamphetamine.  Accordingly, we find the evidence legally sufficient to support the trial court's finding that appellant used a deadly weapon during the commission of the three drug offenses.  Appellant's first three issues are overruled.

On the same evidence, we find the evidence is also factually sufficient to support the trial court's affirmative deadly weapon findings.  Appellant testified that his girlfriend and

8

Campbell had access to his home, and effectively argues the gun could have belonged to either of them. As noted, he also testified Campbell was out to "get" him. Viewing the evidence in a neutral light, we find that favoring the findings is not so weak, nor the contrary evidence appellant emphasizes so strong, as to make the trial court's findings clearly wrong or manifestly unjust. Accordingly, we hold that the evidence is factually sufficient to support the finding that appellant used a deadly weapon during the commission of the three narcotics offenses. We overrule appellant's fourth, fifth and sixth issues.

Having overruled appellant's issues, we affirm the trial court's judgment.


James T. Campbell
Justice


Do not publish.